UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| ROBERT CARTY, Individually and as Parent and Next Friend of Minor E.C., <br><br> v. <br><br> UNITED PARCEL SERVICE, INC. | Civil Case No.: 1:19-cv-00354-JL |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

NOW COMES the Defendant, United Parcel Service, Inc. ("UPS"), by and through its counsel, Orr & Reno, Professional Association, and pursuant to Federal Rule of Civil Procedure 12(c) hereby submits this Memorandum of Law in Support of its Motion for Judgment on the Pleadings, and respectfully requests that the Court dismiss Plaintiff's claims (which consists of two virtually identical negligence Counts, the first of which Plaintiff asserts "as parent and next friend of [E.C.]" and the second that he asserts "individually" relative to the expenses for E.C.'s medical treatment) against UPS for the reasons set forth herein.

**I.      INTRODUCTION**

Plaintiff asks the Court to trespass upon a space expressly reserved for federal regulation. The federal government, alone, holds the authority to set the rules, regulations, and laws by which common carriers are bound.  Congress contemplated preemption of state laws related to common carriers in an effort to assure efficiency and low prices in the shipment of commercial goods.  Countenancing Plaintiff's claims in this matter would not only fly in the face of federal law calling for such preemption, but would moreover cause UPS untold financial hardship in restructuring its delivery services to ensure future compliance with standards set forth by this Court in spite of Congress's mandate.

1

Furthermore, and in the alternative, UPS is entitled to judgment on Plaintiff's pleadings because Plaintiff's Complaint fails to state a claim against UPS that alleges sufficient foreseeability (and thus establishing a duty to anticipate the events that occurred) to support Plaintiff's two negligence claims.  For all of the reasons set forth herein, Plaintiff's Complaint should be dismissed.

II.     **STATEMENT OF ALLEGED FACTS**[1]

Plaintiff is the father and next friend of a minor child, E.C.  Complaint at ¶ 1.  On May 11, 2016, UPS delivered a "large and heavy" package to the Carty home in Durham, New Hampshire (the "House").  *Id.* at ¶ 7.  The package contained a piece of unassembled furniture (the "Package").  *Id.*  The UPS driver who delivered the Package left it leaning upright against a wall directly beside the door at the House's front entrance.  *Id.* at ¶ 8.  Later that day, E.C., then age seven, along with her sister and their mother, Polly, returned to the House/their home.  *Id.* at ¶¶ 7, 10.  Plaintiff's Complaint is bereft of any allegation that a small and young minor child's presence upon the premises, at any point in time, but particularly after the delivery was completed and the UPS driver left the premises, was or should have been at all foreseeable to the UPS delivery driver at the time of delivery.[2]  Through events not described in the Complaint, the Package fell on E.C. and her head struck the ground.  *See id.* at ¶ 11.  Plaintiff alleges E.C. was rendered unconscious and sustained "a significant closed head injury."  *Id.* at ¶ 12.

---

[1] These are the allegations in Plaintiff's Complaint and are set forth herein in accordance with the applicable standard of review.  *See infra* at 3.  UPS's recitation of facts herein is not an adoption or admission as to the veracity or accuracy of the allegations contained in Plaintiff's Complaint.  Moreover, UPS expressly reserves the right to contest such allegations in later pleadings and proceedings, if necessary, and put Plaintiff to his proof thereon.

[2] At most, in a conclusory manner, Plaintiff alleges that the UPS driver left the package leaning in such a manner that it "was foreseeable that it might fall on a child."  Complaint at ¶¶ 15, 20; *compare with id.* at ¶ 8 (alleging that the package was left "leaning against the house near one of the residence's doorways in such a way that it could fall on a child and cause serious injuries").

Plaintiff filed two negligence claims against UPS—one (on E.C.'s behalf) addressing the physical and emotional injuries E.C. allegedly sustained, and the other (on Plaintiff's own behalf) addressing the expenses he alleges he incurred relative to E.C.'s medical treatment.

### III. APPLICABLE STANDARD OF REVIEW

1. Rule 12(c) Standard for Judgment on the Pleadings

A Rule 12(c) motion for judgment on the pleadings considers the factual allegations in both the complaint and the answer, and it is governed by the same standard as a Rule 12(b)(6) motion to dismiss. *See Diaz-Nieves v. United States*, 858 F.3d 678, 689 (1st Cir. 2017); *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008). To survive such a motion, the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

The complaint must allege each of the essential elements of a viable cause of action. *Id.* (citation and internal punctuation omitted). Legal boilerplate and general conclusory statements are insufficient to state a cognizable claim. *See Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012). For a claim to be facially plausible, the pleadings must show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678. A plaintiff cannot merely restate the defendant's potential liability. *Id.*

2. Statutory Interpretation

In interpreting a statute, the Court is to ascribe the plain and ordinary meaning to the words used. *Appeal of Town of Seabrook*, 163 N.H. 635, 643 (2012). Where the analysis requires the Court to consider federal law, such law is interpreted in accordance with federal policy and precedent. *Pelkey v. Dan's City Used Cars, Inc.*, 163 N.H. 483, 487 (2012). The

Court is to "interpret a statute in the context of the overall statutory scheme and not in isolation." *Id.* It is in this context UPS argues Plaintiff's claims are preempted by federal law, in its first argument below.

## IV.  ARGUMENTS

### A. UPS is Entitled to Judgment on the Pleadings on Plaintiff's Claims Because Plaintiff's Claims Are Preempted by Federal Law.

Federal preemption is rooted in the Supremacy Clause of the United States Constitution, which mandates that federal law is the "supreme Law of the Land." U.S. Const. art. VI, cl. 2. Preemption is express—as opposed to implied—where congressional intent to preempt state law is made clear in the language of a federal statute. *See Tobin v. Fed. Express Corp.*, 775 F.3d 448, 452 (1st Cir. 2014).

Congress has determined that the free flow of interstate commerce requires that the transportation services provided by carriers of property, such as UPS, are to be governed solely by uniform *federal* rules. In enacting the Federal Aviation Administration Authorization Act of 1994 (the "FAAAA"), Congress intended to preempt and prohibit actions like the one at bar. *See Dan's City Used Cars, Inv. v. Pelkey*, 569 U.S. 251, 260 (2013) ("The FAAAA's preemption clause prohibits enforcement of state laws 'related to a price, route, or service of any motor vehicle carrier . . . with respect to the transportation of property.'").

The applicable preemption clause of the FAAAA reads, as follows:

> [A] State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

4

49 U.S.C. § 14501(c)(1).[3]  As used above, the term "motor carrier" means "a person providing motor vehicle transportation for compensation," *see* 49 U.S.C. § 13102, and, as explained in detail below, therefore covers UPS.  Accordingly, the FAAAA operates to bar New Hampshire from enacting or enforcing any law having the force or effect of law related to a price, route, or service of UPS.  Claims that seek to impose obligations on UPS concerning the manner in which it is required to make deliveries are preempted because they are based on the core service provided by UPS — the transportation and delivery of packages — and improperly seek to apply state law to control the manner in which UPS provides that service.

The recent First Circuit opinion of *Tobin v. Federal Express Corp.*, 775 F.3d 448 (1st Cir. 2014) is illustrative.  In *Tobin*, the Court considered whether the plaintiff's state law claims for intentional and negligent infliction of emotional distress, and negligence, were barred by the preemption provision of the Airline Deregulation Act (ADA), 49 U.S.C. § 41713(b)(1).[4]  The analytical framework employed serves as a template for the Court's analysis in the case at bar.

The Court's inquiry was essentially twofold: (1) whether the plaintiff's claim is predicated on a "law, regulation or other provision having the force and effect of law;" and (2) whether the plaintiff's claim is sufficiently "related to" a carrier's prices, routes, or service to warrant preemption.  *Tobin*, 775 F.3d at 453.  If, as here, both questions are answered in the affirmative, a plaintiff's claims cannot proceed.

---

[3] A second FAAAA express preemption provision also arguably applies to UPS in this case.  49 U.S.C. § 41713(b)(4)(A) applies to air carriers and carriers affiliated with direct air carriers.  Courts have applied both preemption provisions to UPS.  *See, e.g.*, *W. Parcel Express v. United Parcel Serv. Of Am., Inc.*, No. C 96-1526 CAL, 1996 WL 756858, at *1 (N.D. Cal. Dec. 3, 1996).  Regardless of which provision applies to UPS here, the preemptive language in both provisions is identical.  *See* 49 U.S.C. § 14501(c)(1); *id*. § 41713(b)(4)(A).

[4] The ADA and FAAAA share parallel language regarding preemption of state claims; therefore, courts value equally interpretative case law covering either statute.  *See Dan's City Used Cars, Inc.*, 569 U.S. at 260 ("[O]ur reading of [49 U.S.C. § 14501(c)(1)] was informed by decisions interpreting the parallel language in the ADA's preemption clause.").  The FAAAA preemption provisions are modeled on the language in the ADA and the preemptive clauses of those statutes are interpreted broadly and expansively.  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992).

As in *Tobin*, part one of the above inquiry is easily answered in the affirmative. The Supreme Court has made it abundantly clear that state common-law causes of action are provisions that have the force and effect of law for purposes of preemption. *See id.* at 453 (citing *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 281 (2014) relative to preemption under the ADA, which, again, the courts broadly apply to FAAAA preemption, *see Morales*, 504 U.S. at 384; *Rowe v. New Hampshire Motor Transp. Assn.*, 552 U.S. 364, 370 (2008)); *see also Northwest, Inc.*, 572 U.S. at 282-83 (holding that common-law rules constitute state law). In this case, Plaintiff advances two common-law negligence claims. As such, the Court should turn, as the *Tobin* court did, to whether Plaintiff's claims are sufficiently related to UPS's prices, routes, or service to warrant preemption.

For the purposes of FAAAA preemption, "it is not sufficient that a state law relate[] to the 'price, route, or service' of a motor carrier in any capacity; the law must also concern a motor carrier's 'transportation of property.'" *Dan's City Used Cars, Inc.*, 569 U.S. at 261. The FAAAA defines "transportation," in pertinent part, as including a "motor vehicle . . . related to the movement of . . . property" and "services related to th[e] movement [of property], including arranging for, receipt, **delivery**, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property." 49 U.S.C. § 13102(23)(A) and (B) (emphasis added).

Here, Plaintiff's negligence claims are founded upon the allegation that "UPS had a duty to use reasonable care when delivering large and heavy packages to place them in such a way to avoid causing foreseeable harm to others." Complaint at ¶¶ 14, 19. As such the claims, and the common law Plaintiff seeks to apply, are directly related to UPS's transportation of property. *See Vieira v. United Parcel Service, Inc.*, No. C-95-04697, 1996 WL 478686, at *1 (N.D. Cal.

Aug. 5, 1996) (holding that negligence and conversion claims arising from a lost UPS package related to "UPS's services" and were therefore preempted by the FAAAA); *Northwest, Inc.*, 572 U.S. at 282-84 ("A claim satisfies this requirement if it has 'a connection with, or reference to,' [motor carrier] prices, routes, or services" (*quoting Morales*, 504 U.S. at 384)). A state action is not "related to" motor carrier prices, routes, or services only when its impact is too tenuous, remote, or peripheral. *Morales*, 504 U.S. at 390.

*Pelkey v. Dan's City Used Cars, Inc.*, 163 N.H. 483 (2012), which involved claims brought by the owner of a vehicle that was towed from his apartment who brought an action against the towing company, was a case where the New Hampshire Supreme Court held that the FAAAA did not apply to the plaintiff's state law claims relating to an alleged unlawful towing. *Id.* at 487-92. In *Pelkey*, the New Hampshire Supreme Court observed, "When a towing company seeks to recover the costs incurred from towing and storing a vehicle, the manner in which it does so is not incidental to the *movement* of property by a motor carrier. Rather, it is incidental to the rights of property owners to recover their property, and the parallel obligations of the custodians of that property to accommodate the vehicle owners' rights . . . ." *Id.* at 489. Unlike *Pelkey*, though, Plaintiff's claims regarding UPS's manner of package delivery go to the very heart of the services that UPS provides—namely delivering packages <u>and company policies and procedures for such deliveries</u>.

There can be no doubt as to whether the Court's ruling upon Plaintiff's claims would "have a 'forbidden significant effect' on prices, routes, or services" such that the claims "fall under the [FAAAA's] protective carapace." *See Tobin*, 775 F.3d at 454; *see also id.* at 455 (recognizing the broad construction afforded to the "related to" language and how that "intent is driven by the desire to further efficiency, innovation, and low prices as well as variety and

7

quality of services and to ensure that the states do not undo federal deregulation with regulation of their own" (quotations omitted)); *Rowe v. New Hampshire Motor Transp. Assn.*, 552 U.S. 364, 371 (2008) (discussing *Morales*, 504 at 374 and stating that the United States Supreme Court "described Congress' overarching goal as helping ensure transportation rates, routes, and services that reflect 'maximum reliance on competitive market forces,' thereby stimulating 'efficiency, innovation, and low prices, as well as 'variety' and 'quality'" (quoting *Morales*, 504 U.S. at 378)).

Barring Plaintiff's claims here achieves the purpose of the FAAAA's preemption provision—namely avoiding "a patchwork of state service-determining laws, rules, and regulations." *See Rowe*, 552 U.S. at 372-73; *see also Massachusetts Delivery Ass'n v. Healey*, 821 F.3d 187, 191 (1st Cir. 2016) (referring to FAAAA preemption as "purposefully expansive and [stating that it] may occur even when the state law has only an indirect effect on prices, routes, or services"). As in *Tobin*, finding UPS to be at fault here would require Plaintiff to prove UPS's delivery practices were inadequate or that the delivery practices, though adequate, were carried out carelessly by UPS employees. *See Tobin*, 775 F.3d at 455. The *Tobin* court had this to say about these two options:

> In the former circumstance, a finding that [UPS]'s procedures were inadequate would have the significant effect of requiring new and enhanced procedures for labeling, verification, and delivery of packages.
>
> . . .
>
> In the latter circumstance, a finding that the actions of [UPS]'s employees breached a state-law duty of care would also produce a significant forbidden effect. Such a finding would effectively supplant market forces with [New Hampshire] common-law definitions of reasonableness and, thus, create the very patchwork of state-based regulations that [FAAAA] preemption is meant to preclude.

*Id.* Because the congressional intent of the FAAAA would be impermissibly trammeled upon by either result, the Court should dismiss Plaintiff's claims as preempted by federal law.

Furthermore, Plaintiff's claims are preempted by the FAAAA because of the significant additional costs that they would impose upon UPS nationwide. FAAAA preemption is focused on cases that would alter the delivery process and force a common carrier such as UPS to changes its entire shipping operation nationwide, which would come at a huge financial cost. *See, e.g.*, *Centuori v. United Parcel Service, Inc.*, No. C16-0654JLR, 2017 WL 1194497, at *7 (W.D. Wash. June 27, 2017) (alleging UPS should not have the left the package at the plaintiff's home without his consent); *Rockwell v. United Parcel Serv., Inc.*, No. 99-CV-57, 1999 WL 331000896, at *8 (D. Vt. July 7, 1999) (arguing that UPS should have used a heightened and elaborate inspection process as part of its delivery system). In this case, the delivery process at issue is driver release, where a driver is permitted to leave the package for a customer even when the customer is not physically present to receive it. If UPS could be held liable under a common law negligence theory for its driver's decision to leave what was allegedly a large and heavy package containing a piece of unassembled furniture leaning against a wall beside a front door, then to avoid the possibility of liability should someone come along (particularly a young and small child) and knock such a package over on themselves (and uncertainty in terms of what is acceptable in a delivery and the possibility of the 50 states having different views of what is acceptable), UPS would need to change its delivery process. That would result in significant costs to the company, ultimately driving up costs for UPS's customers. Such a change could include never leaving a package over a certain pre-determined weight or certain dimensions (and thus requiring UPS to weigh and/or measure all potentially heavy and/or larger-sized packages) at a residential delivery location (and only allowing delivery if the customer or another adult is

present to accept the delivery), particularly at a delivery location where a small child or other potentially vulnerable persons *might* possibly, given all sorts of uncertainty and variability for the standards for when a small minor's presence is or should be foreseeable, come in contact with the package. Such matters would also necessitate UPS increasing its package weighing and measuring tools, practices, and means. This would all come at additional cost to the company and ultimately the consumer. UPS could be forced to change its delivery policies and procedures to prohibit driver-release for packages over a certain weight or certain dimensions. All of this would drastically alter the manner in which UPS provides package shipment services to and from various markets at various times, and also impose added cost on UPS in returning the package to one of its facilities (for customer retrieval) or requiring UPS to reattempt delivery, all at added expenses to UPS and ultimately customers. Such a consequence of a change in policy prompted by liability stemming from a common law negligence claim is precisely what the FAAAA preemption seeks to avoid—a patchwork regulatory framework that Congress intended to avoid by enacting the FAAAA's preemption provision. H.R. Conf. Rep. No. 103-677, at 83-85, as reprinted in 1994 U.S.C.C.A.N. at 1755-57.

Instead of leaving UPS liability relative to its driver-release program up to juries to decide, in varying ways, the better approach is a federal directive. *See A.C.L. Computers and Software, Inc.*, No. 15-CV-04202-HSG, 2016 WL 946127, at *3 (N.D. Cal. Mar. 14, 2016) (holding that the plaintiff's negligence claims against FedEx were preempted under the FAAAA and reasoning that imposing a state standard of reasonableness "in place of the market forces which currently dictate FedEx's delivery practices" would create the "state regulatory patchwork that the Supreme Court forbade in Rowe[, 552 U.S. at 373]"). Thus, in order to keep uniformity

in regulation of common carriers such as UPS, the FAAAA preempts Plaintiff's state-law claims and they must be dismissed.

### B. Plaintiff's Claims Fail For Lack of Foreseeability.

Additionally, and in the alternative, in New Hampshire, to prevail on a negligence claim, a plaintiff must show: (1) the defendant owed him a duty; (2) the defendant breached this duty, and (3) the breach proximately caused his injuries. *Macie v. Helms*, 156 N.H. 222, 224 (2007). Plaintiff's claims also fail to state a claim, and thus UPS is entitled to judgment on the pleadings, because Plaintiff has not alleged adequate foreseeability.

With regard to proximate cause, foreseeability, and the scope of any duty owed, it is not boundless. "The risk reasonably to be perceived defines the duty to be obeyed." *Palsgraf v. Long Island R. Co.*, 162 N.E. 99, 100 (N.Y. 1928). Under New Hampshire law, "[t]he scope of the duty, therefore, is limited to those risks that are reasonably foreseeable." *Macie*, 156 N.H. at 224-25; *see also Thibeault v. Campbell*, 136 N.H. 698, 701 (1993) ("In order for one's conduct to constitute tortious negligence, it must be in breach of an existing duty and create a foreseeable risk of harm to someone to whom that duty is owed."). As explained by the New Hampshire Supreme Court:

> The key to applying a traditional negligence approach is the doctrine of foreseeability. Duty and foreseeability are inextricably bound together. . . . <u>A person may be liable only to those who are foreseeably endangered</u> by his conduct and <u>only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous</u>. His duty is <u>measured by the scope of the risk which negligent conduct foreseeably entails</u>.

*Corso v. Merrill*, 119 N.H. 647, 651 (1979) (citations and quotations omitted (emphasis added)); *see also Grady v. Jones Lang LaSalle Construction Company, Inc.*, 171 N.H. 203, 207 (2018) ("The existence of a duty does not arise solely from the relationship between the parties, but also from the need for protection against reasonably foreseeable harm." (quotation omitted)).

11

"Whether a defendant's conduct creates a sufficiently foreseeable risk of harm to others sufficient to charge the defendant with a duty to avoid such conduct is a question of law." *Macie*, 156 N.H. at 224; *Jones v. Secord*, 684 F.3d 1, 7 (1st Cir. 2012).

The events giving rise to E.C.'s accident, as alleged by Plaintiff in his Complaint, *see* Complaint at ¶¶ 7-8, 10-11, were not and should not have been foreseeable to the UPS delivery driver.  Thus, Plaintiff has failed to state negligence claims against UPS.  In most circumstances, a driver could not foresee the possibility of harm to a consignee or third party after delivery.  That is particularly true when the injured person was a minor, the minor was not present at the time the package was delivered, and Plaintiff has not alleged that UPS was on notice of the minor's presence or potential presence or that UPS should have known the same.  *See id.* at ¶¶ 6, 10.  The New Hampshire Supreme Court has explained, "Parties owe a duty to those third parties foreseeably endangered by their conduct with respect to those risks whose likelihood and magnitude make the conduct unreasonably dangerous."  *Remsburg v. Docusearch, Inc.*, 149 N.H. 148, 153 (2003); *see also State v. Exxon Mobil Corp.*, 168 N.H. 211, 235 (2015) ("Not every risk that might be foreseen gives rise to a duty to avoid a course of conduct; a duty arises because the likelihood and magnitude of the risk perceived is such that the conduct is unreasonably dangerous." (quotation omitted)).  Except in unusual circumstances, risk of injury would not be foreseeable to a driver following delivery of a package.  Plaintiff's Complaint fails to allege that the minor E.C.'s potential presence on the property was foreseeable to UPS or its delivery driver, or that it should have been.  As Plaintiff has no facts upon which he can rely to allege that E.C.'s potential presence at the House and her accident was or should have been foreseeable to the UPS driver, and as Plaintiff's deadline to amend his pleadings has expired, UPS is entitled to entry of judgment on the pleadings in its favor and Plaintiff's claims should be dismissed with prejudice.

**CONCLUSION**

As stated above, UPS is a company that conducts business nationwide (and internationally) and it handles, ships, and delivers millions of packages every day. If this Court were to allow a judgment to enter in favor of Plaintiff and hold that UPS has a duty not to leave a package delivered to a residential customer leaning upright against the wall beside a front door, there would be severely detrimental effect on UPS's business by requiring <u>significant changes to company policy</u>, all resulting in major change to the manner of shipping operation and the expenditure of massive sums of money. Such changes would increase the cost of delivery for UPS and, in turn, its customers. It is for these reasons, and avoiding a patchwork regulatory framework across all 50 states, that Congress enacted the FAAAA to provide uniform regulation of shipping and delivery companies that do business in all 50 states. As such, the FAAAA's regulations are controlling, preempt any state statute, common law, or court decision relative to Plaintiff's claims, and require dismissal of Plaintiff's claims.

Moreover, UPS is entitled to judgment on Plaintiff's claims because Plaintiff's Complaint fails to state a claim upon which relief can be granted. Plaintiff's Complaint fails to allege that the minor E.C.'s potential presence on the property and her accident was foreseeable to UPS or its delivery driver, or that it should have been. Thus, Plaintiff's Complaint fails to state necessary elements of his Count I and II negligence claims and those Counts fail to state claims upon which relief can be granted. Where Plaintiff's two Counts are both negligence claims and Plaintiff's deadline to amend his pleadings has closed, Plaintiff's Complaint should be dismissed with prejudice.

For the foregoing reasons, UPS is entitled to judgment on the claims in Plaintiff's Complaint against UPS.  Therefore, the Complaint and Plaintiff's claims must be dismissed with prejudice.

Respectfully submitted,

**United Parcel Service, Inc.**

By its attorneys,

ORR & RENO, PROFESSIONAL ASSOCIATION

Dated:  August 14, 2019		By:	*/s/ Jonathan M. Eck*
				Jonathan M. Eck, Esq. (NH Bar #17684)
				45 S. Main Street
				Concord, NH  03302
				(603) 223-9100
				jeck@orr-reno.com

## CERTIFICATE OF SERVICE

I, Jonathan M. Eck, certify that on this date service of the foregoing document was made upon counsel of record via the Court's CM/ECF System.

Dated:  August 14, 2019		*/s/ Jonathan M. Eck*
				Jonathan M. Eck, Esq. (NH Bar #17684)