UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

ROBERT CARTY, Individually and as Parent and Next Friend of Minor E.C.,

    v.

UNITED PARCEL SERVICE, INC.

Civil Case No.: 1:19-cv-00354-JL

**MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Robert Carty, Individually and as Parent and Next Friend of Minor E.C., by and through his attorneys, Primmer Piper Eggleston & Cramer PC, submits the following Memorandum of Law in support of his Objection to Defendant's Motion for Judgment on the Pleadings.

**I.     BACKGROUND**

On May 11, 2016, Robert Carty's daughter, E.C., suffered a significant head injury at her home in Durham, New Hampshire, which was caused by the negligence of Defendant United Parcel Service, Inc. ("UPS"). Complaint, 6. UPS delivered a large and heavy package to the house where E.C. lived with her parents, precariously leaning the package against the residence next to one of its entrances. Complaint, 8. UPS did so despite the fact that the package was labeled with UPS' own "Caution – Heavy Package" stickers, and despite the fact that the package, as positioned by UPS, could fall on a child and cause serious injuries. Complaint, 9. That is precisely what happened to E.C. She returned home with her mother and sister, and the package fell on E.C., rendering her unconscious and causing her to sustain a significant closed head injury. Complaint, 10-12.

*3964054.1*

## II.     ARGUMENT

UPS' motion for judgment on the pleadings should be denied, as personal injury tort claims are not preempted under the Federal Aviation Administration Authorization Act of 1994 (the "FAAAA"), and where the injury to E.C. was foreseeable.

### A.     FAAAA PREEMPTION DOES NOT APPLY

UPS maintains that the FAAAA preempts Mr. Carty's state law personal injury negligence claims, an argument already rejected by virtually all courts to consider it. This Court, accordingly, should follow the authority below and hold that the FAAAA does not preempt the personal injury tort claims in this case.

#### i.     Personal Injury Negligence Actions not Preempted Under FAAAA

"Preemption analysis begins with the presumption that Congress does not intend to supplement state law. Although Congress clearly intended FAAAA to preempt some state regulations of motor carriers who transport property, the scope of the pre-emption must be tempered by the presumption against pre-emption of state police power regulations." Tillison v. Gregorie, 424 F.3d 1093, 1098 (9th Cir.2005) (citation and internal quotation marks omitted); Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996). See also Wyeth v. Levine, 555 U.S. 555, 565 (2009) (stating presumption against preemption applies "in all preemption cases" and is especially strong in areas of traditional state regulation).

The FAAAA's preemption clause provides: "States may not enact or enforce a law . . . related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). Courts interpreting that language have routinely held that the FAAAA does not go so far as to preempt state laws that affect prices, routes, or services in "only a tenuous, remote, or peripheral manner . . ." E.g., Morales v. Trans World Airlines, Inc., 504

U.S. 374, 390 (1992); Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 371 (2008). As the Supreme Court has recently observed, "the breadth of the words 'related to' does not mean the sky is the limit." Dan's City Used Cars, Inc. v. Pelkey, 569 U.S. 251, 260 (2013). Because "everything is related to everything else," Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., 519 U.S. 316, 355 (1997) (Scalia, J. concurring), courts must distinguish between laws that are significantly "related to" rates, routes, or services, which are preempted, and those that have "only a tenuous, remote, or peripheral" connection to rates, routes, or services, and thus are not preempted. Rowe, 552 U.S. at 371.

By enacting the FAAAA, which contains preemption language virtually identical to the Airline Deregulation Act, Congress sought to create parity between freight services provided by air carriers and those provided by motor carriers. Californians for Safe & Competitive Dump Truck Transp. v. Mendoca, 152 F.3d 1184, 1187 (9th Cir.1998). Congress thus intended for the preemption provisions of the FAAAA to be applied in an identical manner as the preemption provision of the ADA. Dilts v. Penske Logistics, LLC, 769 F.3d 637 (2014); Deerskin Trading Post, Inc. v. United Postal Service of America, Inc., 972 F.Supp. 665, 668 (N.D.Ga.1997). The only difference between the ADA and the FAAAA preemption clauses is that the latter contains the additional phrase "with respect to the transportation of property," that is absent from the ADA, and which "massively limits the scope of preemption ordered by the FAAAA." Dan's City Used Cars, Inc., 569 U.S. at 261.

The principal purpose of the FAAAA was "to prevent states from undermining federal deregulation of interstate trucking" through a "patchwork" of state regulations. Am. Trucking Ass'ns v. City of Los Angeles, 660 F.3d 384, 396-96 (9th Cir.2011). When it enacted the FAAAA, Congress considered laws that created barriers to entry, tariffs, price regulations, and

laws governing the types of commodities that a carrier could transport. <u>Dilts</u>, 769 F.3d at 644 (<u>citing</u> H.R. Conf. Rep. No. 103-677, at 86 (1994)). The FAAAA expressly does not regulate a state's authority to: enact safety regulations with respect to motor vehicles; control trucking routes based on vehicle size, weight, and cargo; impose certain insurance, liability or standard transportation rules; regulate the intrastate transport of household goods and certain aspects of tow-truck operations; or create uniform cargo or antitrust immunity rules. 49 U.S.C. § 14501(c)(2), (3). Congress did not intend that list to be "all inclusive, but merely to specify some of the matters which are not 'prices, rates or services' and which are therefore not preempted. <u>Dilts</u>, 769 F.3d at 644 (<u>citing</u> H.R. Conf. Rep. No. 103-677, at 84). The FAAAA thus was not meant to preempt "generally applicable state transportation, safety, welfare, or business rules that do not otherwise regulate prices, routes or services." <u>Id.</u>

That a state law, regulation, or cause of action may raise business costs for a motor carrier is immaterial. Generally applicable laws that are "several steps removed from prices, routes, or services, such as prevailing wage laws or safety regulations are not preempted, even if [businesses] must factor those provisions into their decisions about the prices they set, the routes that they use, or the services that they provide. <u>Id.</u> at 647. Indeed, "[n]early every form of state regulation carries some cost." <u>Id.</u> Even if state laws increase or change a motor carrier's operating costs, "broad law[s] applying to hundreds of different industries with no other forbidden connection with prices[, routes,] and services—are not preempted by the FAAAA." <u>Id.</u> at 648, <u>quoting</u> <u>Air Transp. Ass'n of Am. V. City of San Francisco</u>, 266 F.3d 1064, 1071 (9th Cir.2001) (internal quotations omitted).

Under that framework for applying FAAAA preemption, courts have, with apparent unanimity, held that state-law negligence actions against motor carriers are not preempted. For

instance, the common-law negligence claims at issue in Pelkey v. Dan's City Used Cars, Inc., 163 N.H. 483 (2012), a case cited in UPS' brief, were held *not* to be preempted under the FAAAA as they neither related to "the transportation of property" nor the defendant's "service." Id. at 492. The plaintiff's negligence claim in Pelky alleged that the defendant violated its duty as a bailee to take reasonable care of property in its custody and to ensure its proper return to the bailor. Id. Applying the legal standards set forth above, the court held that ". . . allowing these [] claims against the defendant to proceed does not 'significantly impact' Congress's deregulatory objectives or impose upon the trucking industry a patchwork of different standards relating to price, route, or service [as c]ommon law torts like negligence establish baseline rules of acceptable conduct common to all." Id. at 493 (citing American Airlines, Inc. v. Wolens, 513 U.S. 219, 236-37 (1995).

To be subject to preemption, a state law must "relat[e] to" a carrier's "service," and though "the ordinary meaning of the phrase 'relating to' is a broad one, it is not so broad as to encompass all possible private civil claims against a motor carrier." Pelkey, 163 N.H. at 493. "[S]ervice . . . refers to such things as the frequency and scheduling of transportation, and to the selection of markets to or from which transportation is provided . . . . To interpret 'service more broadly is to ignore the context of its use; and, it effectively would result in the preemption of virtually everything [a carrier] does." Charas v. Trans World Airlines, Inc., 160 F.3d 1259, 1265-66 (1998). See also Wolens, 513 U.S. at 237 n. 2 (Stevens, J., concurring in part and dissenting in part) ("Indeed, every judgment against an airline will have some effect on rates, routes, or service at least at the margin.").

In Charas, which involved five personal injury negligence actions against airlines consolidated for appeal, the plaintiffs were injured by: a flying beverage cart, luggage falling

from an overhead bin, tripping over luggage left in an aisle, and a fall occasioned by a lack of customer assistance. Charas, 160 F.3d at 1262-63. Congress, the court held, used the word "service" "in the public utility sense—i.e., the provision of air transportation to and from various markets at various times . . . . In that context, 'service' does not refer to the pushing of beverage carts, keeping the aisles clear of stumbling blocks, the safe handling and storage of luggage, assistance to passengers in need, or like functions." Id. at 1266. Accordingly, the personal injury negligence actions were held not to be preempted.

In state-law negligence actions, courts have "almost uniformly have resolved against federal preemption" under the FAAAA, ADA, and Interstate Commerce Commission Termination Act ("ICCTA"), for which the same preemption analysis applies. Owens v. Anthony, No. 2–11–0033, 2011 WL 6056409, at *3-4 (M.D. Tenn. N. Div. Dec. 6, 2011) ("The Court agrees with the numerous courts which have found that personal injury negligence claims are not preempted by the FAAAA.") (Ex. A). In Kuehne v. United Parcel Service, Inc., 868 N.E.2d 870 (Ind. Ct. App. 2007), for instance, the plaintiff sued UPS for personal injuries he sustained when tripping over a package left on her doorstep. In ruling the FAAAA did not preempt that plaintiff's personal injury negligence claim, the Kuehne court distinguished the facts before it from those in Rockwell v. United Parcel Serv., Inc., No. 2:99 CV 57, 1999 WL 33100089 (D.Vt. July 7, 1999) (Ex. B). The Rockwell plaintiff had sought to impose liability on UPS for negligently delivering a package containing a pipe bomb, claiming that UPS was negligent in its intake and delivery protocol by failing to have an inspection process as part of its delivery service. Id. at *2. The Rockwell court, finding that claim "go[es] to the heart of the services that UPS provides," decided that FAAAA preemption did apply. Id. The Kuehne plaintiff, on the other hand, simply claimed that the UPS driver should not have placed a package

squarely in front of a door, which created a tripping hazard. Kuehne, 868 N.E.2d at 876. Distinguishing its facts from those in Rockwell, the Kuehne court explained:

> *In our view, such a contention represents a common sense approach to a delivery process that bears no overreaching consequences, contrary to those in Rockwell. Moreover, the Rockwell court dealt with a process before a parcel even reached its ultimate destination, whereas the circumstances here involved an occurrence after that package had reached its destination. It is apparent to us that the pre-delivery processes of UPS certainly relate to its services and that the FAAAA provisions should control in those instances. However, once a package is delivered, we cannot say that subsequent occurrences stemming from the alleged negligence of an employee amount to a "service" of UPS to the extent that federal preemption should apply in all causes of action that a plaintiff might institute against the company.*

Id. That the negligent act in Kuehne occurred upon placement of the package at its final destination, i.e., the customer's doorstep, as opposed to during package intake or transit, was determinative that the claim did not relate to UPS' service. Id. At least two additional courts have denied FAAAA preemption to UPS in cases involving negligent package placement. Muzzarelli v. United Parcel Service, Inc., No. 1:15-cv-01169-JBM-JEH, 2017 WL 2786456 (C.D. Ill. June 27, 2017) (finding FAAAA preemption did not apply as plaintiff's personal injury claim was too tenuously related to UPS' routes, rates, and services, and following courts that "have repeatedly found against preemption . . . in cases where plaintiffs invoke traditional elements of tort law and sue for personal injuries") (Ex. C); Centuori v. UPS, No. C16-0654JLR2, 2017 WL 1194497 (W.D. Wash. Mar. 30, 2017) (finding no preemption as the plaintiff's theories did not require a particular delivery procedure) (Ex. D).

The volume of decisional law, including at least one example from this Court, is compelling. Dudley v. Business Exp., Inc., 882 F.Supp. 199 (D.N.H. 1994) (holding personal injury negligence action not preempted as ". . . even a broad reading of the phrase 'relating to

7

rates, routes, or services' fails to encompass the safety issues raised in plaintiffs' complaint."). See also, Charas, 160 F.3d at 1261 ("Congress did not intend to preempt passengers' run-of-the-mill personal injury claims."); Gilley v. C.H. Robinson Worldwide, Inc., No. 1:18-00536 2019 WL 1410902, at *5 (S.D.W. Va. Mar. 28, 2019) (holding personal injury claims based on state's general negligence law not preempted by FAAAA) (Ex. E); Scott v. Milosevic, 372 F.Supp. 3d 758 (N.D. Iowa 2019) (accord); Nyswaner v. C.H. Robinson Worldwide Inc., 353 F.Supp.3d 892 (D.Ariz. 2019) (accord); Cruz Miguel Aguina Morales v. Redco Transport Ltd., No. 5:14-cv-129 2015 WL 9274068 (S.D. Tex. December 21, 2015) (accord) (Ex. F); Jimenez-Ruiz v. Spirit Airlines, Inc., No. 10–2087 (GAG), 2011 WL 2460873 (D.Puerto Rico June 26, 2011) (observing in context of personal injury case that "[w]here a plaintiff invokes traditional elements of tort law and the issue of preemption arises, the courts almost uniformly have resolved against federal preemption") (internal quotations omitted) (Ex. G); Stone ex rel. Estate of Stone v. Frontier Airlines, Inc., 256 F.Supp.2d (D.Mass. 2002) (claim of negligence for failure to have defibrillator aboard plane not preempted by FAAAA); Cartegena v. Continental Airlines, Inc., 10 F.Supp.2d 677 (S.D. Tex. 1997) (ruling FAAAA did not preempt the plaintiff's state law personal injury claims, as claims related to operation of the airline's aircraft, not the routes or services of the airline); Seals v. Delta Air Lines, Inc., 924 F.Supp. 854, 859 (E.D.Tenn. 1996) (holding preemption clause does not extend to personal injury suits against carriers); Ducombs v. Trans World Airlines, 937 F.Supp. 897 (N.D.Cal. 1996) (accord); Margolis v. United Airlines, Inc., 811 F.Supp. 318 (E.D.Mich. 1993) ("Congress has expressed no intent to preempt traditional state law claims for negligence . . . ."); In re Air Disaster, 819 F.Supp. 1352 (E.D.Mich. 1993) (negligence claims not preempted); O'Hern v. Delta Airlines, Inc., 838 F.Supp. 1264, 1267-68 (N.D.Ill 1993) (accord); Ryes v. Home State County Mut., 983 So. 2d

980 (La. Ct. App. 3d Cir. 2008 (accord).

### ii. Plaintiff's Claims are Not Preempted

UPS has asked the Court to dismiss Mr. Carty's personal injury negligence claims, arguing that FAAAA preemption applies. UPS' argument is surprising given courts' apparently uniform rejection of the argument that the FAAAA preempts ordinary state-law tort claims for personal injuries—cases including at least three where UPS was alleged to have negligently delivered packages to customers, resulting in injuries. Muzzarelli, 2017 WL 2786456; Centuori, 2017 WL 1194497; Kuehne, 868 N.E.2d 870.

Plaintiff's claim that UPS negligently leaned a large and heavy package against their household, which led to the package falling on E.C. UPS' placement of that package had nothing to do with UPS' "service" as that term is defined under FAAAA's preemption clause. See Charas, 160 F.3d at 1262-63 ("[S]ervice . . . refers to such things as the frequency and scheduling of transportation, and to the selection of markets to or from which transportation is provided . . . . To interpret 'service more broadly is to ignore the context of its use; and, it effectively would result in the preemption of virtually everything [a carrier] does."). A "service," in the context of the FAAAA, deals with economics and business strategy. A claim regarding UPS' positioning a package at its final destination does not relate to UPS' selection of markets or scheduling of transportation.

Unlike the claim in Rockwell, where that plaintiff sought to impose liability on UPS for not adequately screening and inspecting packages upon intake, procedures that went "to the heart of the services that UPS provides," Rockwell, 1999 WL 331000089, Mr. Carty's claims involve UPS' negligent placement of a package against his house, the parcel's final destination. The positioning of a package at its final destination is related to UPS' services, at most, in only a

tenuous, remote, or peripheral manner. Morales v. Trans World Airlines, Inc., 504 U.S. 374, 390 (1992); Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 371 (2008). Accordingly, a claim that a carrier negligently positioned a parcel at a final destination, resulting in injury, is not subject to FAAAA preemption. Kuehne, 868 N.E.2d 870 at 876 (". . . once a package is delivered, we cannot say that subsequent occurrences stemming from the alleged negligence of an employee amount to a "service" of UPS to the extent that federal preemption should apply . . . "). The Court should adopt the reasoning of the Muzzarelli, Centuori, and Kuehne, courts in rejecting that package placement relates to UPS' "service."

A central focus of UPS' brief is the unsupported claim that enforcing the generally-applicable standard of care in positioning packages at their final destinations would somehow raise UPS' operational costs. UPS asserts that if this claim goes forward, "UPS could be forced to change its delivery policies and procedures to prohibit driver-release for packages over a certain weight or certain dimensions." Defendant's Memorandum of Law in Support of its Motion for Judgment on the Pleadings, 10. That is obviously not true. The injury to E.C. could have been avoided entirely had the UPS driver laid the package flat on the ground instead of precariously leaning it against the Carty residence. A heavy package poses no risk of falling on a child if it is laid flat on the ground. Nor would it have cost UPS any money to lay the package flat. Cf. Rockwell, 1999 WL 331000896, at *8 (alleging UPS should have implemented elaborate inspection and security screening process as part of package intake system).

UPS' argument simply goes too far, and by its logic the company apparently argues that it should be immune, via FAAAA preemption, from any negligence claims. That, however, is not how courts have applied FAAAA preemption. Though "the ordinary meaning of the phrase 'relating to' is a broad one, it is not so broad as to encompass all possible private civil claims

against a motor carrier." Pelkey, 163 N.H. at 493. "[S]ervice . . . refers to such things as the frequency and scheduling of transportation, and to the selection of markets to or from which transportation is provided . . . . To interpret 'service more broadly is to ignore the context of its use; and, it effectively would result in the preemption of virtually everything [a carrier] does." Charas v. Trans World Airlines, Inc., 160 F.3d 1259, 1265-66 (1998).

The foregoing authorities require the conclusion that "Congress did not intend to preempt [Mr. Carty's] run-of-the-mill personal injury claims" as they are too tenuously related, if at all, to UPS' service. Charas, 160 F.3d at 1261. The Court accordingly should reject UPS' preemption argument.

### B. THE INJURY TO E.C. WAS FORESEEABLE

UPS presents two flawed arguments for dismissal based on foreseeability. It first claims that Mr. Carty did not adequately plead foreseeability in the Complaint. That contention is easily dispatched. Complaint, ¶ 8 ("When UPS delivered the long and heavy parcel to 10 Denbow Road it left the box leaning against the house near one of the residence's doorways in such a way that it could fall on a child and cause serious injuries."); Complaint, ¶ 15, 20 ("UPS breached that duty by precariously leaning a large and heavy package against the 10 Denbow Road residence when it was foreseeable that it might fall on a child.).

UPS' principal foreseeability argument appears to be that it was not foreseeable to its delivery driver that a child might be present at the Carty residence. As a threshold matter, UPS' request that the Court dismiss this action based on a lack of foreseeability is premature. UPS cites Palsgraf v. Long Island R. Co., 248 N.Y. 339 (1928) and Macie v. Helms, 156 N.H. 222 (2007), cases instructive in defining legal foreseeability. Those cases, however, illustrate how incredibly premature UPS' motion is. Foreseeability generally raises mixed questions of law and

fact. Ashworth v. Albers Medical, Inc., 410 F.Supp.2d 471 (S.D.W. Va. 2005). Discovery is ongoing in the present case, and the Court lacks sufficient facts to rule, *as a matter of law*, that an injury caused by UPS' actions was not foreseeable. Palsgraf, Macie, and the myriad cases setting forth the familiar standard of foreseeability were all decided upon a complete factual record, i.e., after trial or upon completion of discovery. At trial, Mr. Carty will introduce evidence that Denbow Road, where E.C. was injured, is a small, U-shaped road that connects on both ends to another residential street, and is part of a large residential neighborhood of the sort where many children live. A satellite image, for instance, demonstrates that fact. Bing Satellite Image (Ex. H). UPS has asked the Court to rule on the pleadings and as a matter of law that the harm was not foreseeable. At this juncture, prior to the close of discovery, that request is premature.

But even the available facts, applied to the legal standard for foreseeability, belie UPS' contention that the injury was unforeseeable as a matter of law. "In determining whether a duty exists, [courts] recognize that no negligent act threatens all imaginable harms; unreasonably dangerous conduct is dangerous because it threatens particular kinds of harms to particular kinds of persons in particular ways; responsibility should follow the pattern of the risk." Macie, 156 N.H. 222, 224 (quoting Annotation, Foreseeability as an Element of Negligence and Proximate Cause, 100 A.L.R.2d 942, 961–62 (1965)). Accordingly, "the risk to be perceived defines the duty to be obeyed." Palsgraf, 248 N.Y. at 344.

UPS' argument is based on an incorrect understanding of foreseeability. It argues that the injury to E.C. was not foreseeable because the driver could not have foreseen a *child* might be injured by the heavy package. However, "[t]he fundamental basis of liability for actionable negligence is the reasonable foreseeability of the risk, the ability reasonably to anticipate the

12

risk; every possible accident due to unusual and reasonably unforeseeable combinations of circumstances is not included; reasonable foresight is required but not prophetic vision." Cartee v. Saks Fifth Ave., 277 A.D. 606, 609-10 (N.Y.App. Div. 1951). Foresight of injury to a child, specifically, is not legally required. Foreseeability here requires only knowledge that heavy objects can hurt people. UPS, no doubt, is aware of that fact, particularly given that it labeled the package that fell on E.C. with "Caution – Heavy Package" stickers. Complaint, 9. That fact alone is thus sufficient for the Court to reject UPS' foreseeability argument.

Nevertheless, it was also foreseeable to the UPS driver that children might be present where E.C. was hurt. A reasonable person will foresee the potential that children might be present and will foresee how children might interact with their surroundings. Kellner v. Lowney 145 N.H. 195 (2000). In Kellner, the New Hampshire Supreme Court held that it was foreseeable to an owner of a motel that was located on both sides of a roadway that a child might dart into the roadway while crossing to the other building and get hit by a vehicle. Id. at 199. The motel's layout, having its buildings on both sides of a road, created a foreseeable risk to children, and the owner should have taken reasonable steps to alleviate that risk. Id. See also, O'Neil v. Electrolux Home Products, Inc., No. 06–10433–DPW, 2008 WL 2066948 (holding in products liability case, "[I]t was foreseeable that the Tractor would be purchased for residential mowing and that children might be near the Tractor while it was in operation.") (Ex. I); Glenn v. G.I. Industries, No. B167900, 2004 WL 1689395 (2nd Cir. 2004) (Ex. J); (finding residential nature of area made foreseeable child's presence); State v. Mickel, 581 So. 2d 404 (La.App. 5 Cir. 1991) (finding that it was foreseeable that a person may be seriously injured or killed when the defendant fired a weapon in a residential neighborhood where children were playing); Gregory v. Johnson, 249 Ga. 151 (1982) (holding jury must determine whether one knew or should have

foreseen presence of children coming into contact with dangerous object); Patterson v. Palley Mfg. Co., 360 Pa. 259 (1948) (collapse of wall under construction onto child held foreseeable in area children could be expected).

UPS' denial notwithstanding, it certainly was "reasonably foreseeable under the particular circumstances" that children might be present at the Carty home and that one might come in to contact with the delivered package. Cui v. Chief, Barrington Police Dep't, 155 N.H. 447, 449 (2007). The UPS driver should have reasonably foreseen that children might be present in the Carty's residential neighborhood, and he also should have foreseen that a child might interact with the package. Kellner, 145 N.H. at 199. As in the above cases, particularly those where the defendants lacked specific knowledge that the child in question would be present at the time of the harm, it was foreseeable to the UPS driver that a child might be present and might interact with the package simply because Denbow Road is part of a large residential neighborhood of the sort where children often live. Id. The duty owed in this case, as with those cited above, follows the risk that should have been perceived. Palsgraf, 248 N.Y. at 344. The Court accordingly should reject UPS' foreseeability arguments.

## III. REQUESTED RELIEF

UPS has presented no adequate grounds for judgment on the pleadings. The overwhelming weight of authority is clear that the FAAAA does not preempt personal injury negligence actions, and the risk of injury to a person such as E.C. was foreseeable to the UPS driver when he leaned the large and heavy package against the Carty residence. Accordingly, the Court should deny UPS' motion.

Respectfully submitted,

**ROBERT CARTY, as parent and next friend of ELIZABETH CARTY**

by his attorneys,

**PRIMMER PIPER EGGLESTON & CRAMER PC**

Dated: August 22, 2019      by:    /s/ Gary M. Burt
Gary M. Burt, #5510
John D. Prendergast, #266235
P.O. Box 3600
Manchester, NH 03105-3600
603.626.3300
gburt@primmer.com
jprendergast@primmer.com

## CERTIFICATE OF SERVICE

The foregoing Memorandum of Law has this day been forwarded to Attorney Jonathan M. Eck via the court's electronic filing system.

/s/ Gary M. Burt
Gary M. Burt, #5510