1999 WL 33100089
Only the Westlaw citation is currently available.
United States District Court, D. Vermont.

Sheila ROCKWELL, individually and as Administratrix of the estate of Christopher Marquis, Plaintiff,

v.

UNITED PARCEL SERVICE, INC. and Armand Gevry, Defendants.

No. 2:99 CV 57.
|
July 7, 1999.

**Attorneys and Law Firms**

Joseph H. Badgewick, Esq., Poultney, for Plaintiff's Counsel.

Robert B. Hemley, Lucy T. Brown, Gravel & Shea, A Professional Corporation, Burlington, John D. Hughes, Denise L. Kosineski, Hutchins, Wheeler & Dittmar, A Professional Corporation, Boston, MA, for Defendant's Counsel.

ORDER

SESSIONS, District Court J.

*1 This case arises out of the tragic events which occurred on March 19, 1998. On that day, Plaintiff Sheila Rockwell's son Christopher Marquis was killed when he opened a package containing a pipe bomb. Ms. Rockwell was also seriously injured in the blast. The package containing the bomb was sent to Mr. Marquis via the United Parcel Service ("UPS"). Neither the Plaintiff nor her son had any reason to believe that the package contained a bomb.

Plaintiff's complaint seeks to impose liability on UPS and its employee who delivered the package, Armand Gevry, for plaintiff's injuries and her son's death through various state tort claims. UPS and Mr. Gevry have filed a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on two separate and exclusive grounds: (1) her claims are preempted under 49 U.S.C. §§ 14501(c)(1) and 41713(b)(4); and (2) she failed to state a cognizable claim under Vermont law since neither UPS nor its employees have a legal duty to inspect packages they deliver or a duty to warn customers of package contents. Plaintiff responded seeking remand of the lawsuit to state court. For the reasons cited below, the Court GRANTS Defendant's Motion to Dismiss and DENIES Plaintiff's Motion to Remand.

Dismissal of a complaint is warranted where the plaintiff has failed to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). On a motion to dismiss, a court considers the legal sufficiency of the claim as stated in the complaint and does not weigh facts underlying the claim or its merits. *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). The complaint is construed in the light most favorable to Ms. Rockwell, her factual allegations are accepted as true and all inferences are drawn in her favor. *Press v. Chemical Inv. Serv. Corp.,* 166 F.3d 529, 534 (2d Cir.1999); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). A motion to dismiss for failure to state a claim will be granted if the plaintiff's allegations, even if true, "can prove no set of facts in support of h[er] claim which would entitle h[er] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A complaint "must at least set forth sufficient information for the court to determine whether some recognized legal theory exists on which relief could be accorded ... If it fails to do so, a motion under Rule 12(b)(6) will be granted." 2 *Moore's Federal Practice,* § 12.34[1][b] (3d ed.1999).

The Federal Aviation Authorization Administration Act ("FAAAA") preempts state law relating to the services of interstate carriers such as UPS. 49 U.S.C. §§ 14501(c)(1) and 41713(b)(4). These preemptive statutes preclude the enactment or enforcement of state laws, or claims arising out of state law, related to the "price, route, or service" of carriers such as UPS. *Carsten v. United Parcel Service, Inc.,* 1996 WL 335421, at 4 (E.D.Cal. Mar.20, 1996). The provisions are modeled on the language found in the Airline Deregulation Act of 1978, 49 U.S.C. § 1305(a)(1) ("ADA"); and the preemptive clauses of these statutes are interpreted broadly and expansively. *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992); *Deerskin Trading Post, Inc. v. United Parcel Serv. of Am. Inc.,* 972 F.Supp. 665, 672 (N.D.Ga.1997) (preemption applies against any tort action "where the subject matter of the action is related to the carrier's prices, routes, or services..."); *see also, American Airlines, Inc. v. Wolens,* 513 U.S. 219, 228, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) (state consumer fraud statute preempted by ADA).

**\*2** The issue before the Court is whether Plaintiff's claims relate to the "price, route or service" provided by UPS. Numerous other courts have addressed this same issue and have determined that these types of claims are preempted by the FAAAA. *See, Deerskin, supra; Western Parcel Express v. United Parcel Service of America, Inc.,* No. C–96–1526–CAL, 1996 WL 756858 at \*1 (N.D.Cal. Dec.3, 1996) (in suit for tortious interference with business relations, court found "14501(c)(1) and 41713(b)(4) preempt the application of all state laws related to UPS's prices, routes or services, not merely those that conflict with federal laws."); *Vieira v. United Parcel Service, Inc.,* 1996 WL 478686 at \*1 (N.D. Cal. Aug 5, 1996) (negligence and conversion claim arising from lost UPS package related to "service" provided by UPS and was therefore preempted by FAAAA); *In re St. Johnsbury Trucking Co.,* 199 B.R. 84, 87 (S.D.N.Y.1996) (state pricing charges preempted in light of the "clarity of the FAAAA's preemptive intent and the unanimity of the case law on this issue").

Analogously, in the context of passenger airline services, courts have recognized that "Congress did not intend to displace or foreclose all tort actions arising under state law, *Somes v. United Airlines, Inc.,* 33 F.Supp.2d 78, 84 (D.Mass.1999). However, it is also firmly established that matters related to "prices, schedules, origins, destinations or the point-to-point transportation of passengers, cargo or mail" are preempted. *Id.* at 83. Specifically, preemption applies to services which are "regular, recurrent, or necessary features of actual flight or airline operations" (as opposed to beverage services and similar amenities). *Id.* [1] *Somes* contrasted those matters which fell outside the ambit of traditional airlines "services" with matters which the court found to be preempted since they were "without question ... at the heart of the 'services' that airlines provide." *Id. at 85. See, e.g., Smith v. Comair, Inc.,* 134 F.3d 254 (4th Cir.1998) (ADA preempted intentional tort allegations to the extent they were premised on airline's refusal to permit boarding); *Travel All Over the World, Inc. v. Kingdom of Saudl Arabia,* 73 F.3d 1423 (7th Cir.1996) (tortious interference, emotional distress, and fraud claims preempted relative to airline's refusal to transport passengers); *Chukwu v. Bd. of Directors of British Airways,* 889 F.Supp. 12 (D.Mass.1995) (slander and intentional infliction of emotional distress claims preempted since wrongful denial of the right to board airplane related directly to airline "services"). *See also, Nazarian v. Air France,* 889 F.Supp. 504, 510 (S.D.N.Y.1998) (claim of airline negligence in operation of its schedule preempted by ADA, but tort claim related to confiscation of passport by airline employee at airport not preempted.)

Unlike *Somes,* the claims against UPS go to "the heart of the 'services' that [UPS] provide[s]." *Somes, at 85*. In the context of delivering packages, Ms. Rockwell's complaint regarding UPS's package intake and delivery protocol is, beyond purview, inherently a claim against UPS's services which is also preempted. *Trujilo v. American Airlines, Inc.,* 938 F.Supp. 392, 394 (N.D.Tex.1995) ("It is clear that the act [plaintiff] complains of—preparation of the Waybill ... and delivery of the package—are services within the meaning of [49 U.S.C.] § 41713(b)(1)" and are therefore preempted); *aff'd* 98 F.3d 1338 (5th Cir.1995). Tort claims regarding a carrier's shipment of packages "would affect [its] provision of air shipment services" and are thus preempted. *Trujilo* 938 F.Supp. at 394.

**\*3** In her complaint, Ms. Rockwell alleges UPS should have used a heightened and elaborate inspection process as part of its delivery service. This would necessarily require that UPS, at a minimum and as stated in Plaintiff's Complaint, employ the services of "various and sundry technological devices such as metal detectors, X-ray machines, as well as trained dogs." Complaint at ¶ 5. Furthermore, UPS would not only be placed in a position where it must protect its receiving customers from potential explosives sent by its shipping customers, but Plaintiff seeks to impose a hodgepodge of state laws which would

mandate various obligations upon UPS to protect the "general public" from "products or objects that *may* be hazardous and life threatening." *Id.* at ¶ 4 (emphasis added). This would place UPS, and other carriers, in a position of segregating, sorting, screening and organizing its billions of packages based on their point of origin, where they are destined, over which states the packages might fly and through which airports the packages could foreseeably be transferred, diverted or otherwise handled. Because these allegations are squarely within the preemptive language of 49 U.S.C. §§ 14501 and 41713 and since imposition of such a duty would necessarily impact directly upon UPS's services and pricing, the causes of action alleged are preempted by federal law.

Plaintiff argues she is entitled to discovery to support her causes of action against UPS. She asserts discovery may elicit information supporting her claim that the inspection system called for in her complaint would have a negligible impact upon UPS's price, route or service and relies upon *Abdu–Brisson v. Delta Airlines, Inc.,* 128 F.3d 77 (2d Cir.1997). *Abdu–Brisson* is not germane to this matter, however, as it involved questions of age discrimination within an airline workforce which the Court of Appeals ruled Congress did not preempt. "[S]tate and local age discrimination law are little different from generally applicable tax, environmental or blue sky law, which as a general matter are not preempted under ADA." *Id.* at 84. The impact on UPS, if the duty demanded by Ms. Rockwell were imposed, would be enormous in both the logistics of providing its services and its pricing. It would fundamentally affect how UPS provides its service. Thus the economic factors, which Plaintiff argues might create a factual dispute here, were not an issue in *Abdu–Brisson.* Furthermore, this is a Rule 12(b)(6) motion where the Court must determine whether the causes of action would survive assuming Plaintiff's allegations are all true, which the Court has done. Thus discovery would not further support Plaintiff's complaint since the factual allegations would still fail as a matter of law. *See, e. g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1138 (2d Cir.1994)(request for discovery inappropriate where litigant argued that "it should be allowed to find out if it has a claim," rather than search for facts to support a cognizable claim).

**\*4** Plaintiff's claims that UPS had a duty to control the conduct of others would fare no better under Vermont law even if they were not preempted by the FAAAA and the ADA. Ms. Rockwell has not alleged any fact which could lead to a finding that UPS has a duty to control or police the surreptitious criminal actions of third parties who may use its services. *See, e.g., Smith v. Day,* 148 Vt. 595, 538 A.2d 157 (1987); Restatement (Second) of Torts § 315 (1965) (There is no duty to "control the conduct of a third person as to prevent him from causing physical harm to another"). Furthermore, just as UPS has no duty to control the conduct of others, it follows that it does not have a duty inspect its customers packages for dangerous contents. *See, Crockett v. Uniroyal, Inc.* 772 F.2d 1524, 1531 (11th Cir.1985)(in wrongful death action, carrier found to have no duty to warn of hazardous chemicals previously transported in rail car). Plaintiff falls to cite any authority establishing such a duty either in Vermont or in any other jurisdiction. Essentially, Plaintiff seeks an order creating such a duty to warn recipients of packages where no such duty exists. The Court declines to create such a cause of action.

Furthermore, Ms. Rockwell does not state a cognizable claim under the Vermont Occupational Safety Hazards Act (VOSHA) since she does not alleged UPS knew of the bomb or that it was a "recognized hazard" faced by UPS employees; *Green Mountain Power Corp. v. Commissioner of Labor and Indus.,* 136 Vt. 15, 24 383 A.2d 1046, 1051 (1978); nor is she a member of the class of persons protected by VOSHA. *Id.,* 136 Vt. at 23, 383 A.2d at 1050 (purpose of Act is to furnish *employees* with a "place of employment ... free from recognized hazards that are causing or are likely to cause death or serious physical harm to ... *employees* ") (emphasis added).

Finally, Plaintiff seeks remand to state court, arguing that there is no diversity of citizenship in light of the fact that Armand Gevry is a party. The Court finds that there is certainly no cognizable claim against Mr. Gevry. His function was merely to deliver the package. Such a function neither creates a duty to inspect the packages he delivers nor warn customers of a package's contents. Since there is no cognizable claim against Mr. Gevry, his being named a party does not defeat diversity jurisdiction. Moreover, this Court has jurisdiction under the FAAAA. As a result, Plaintiff's motion for remand is meritless.

II *Conclusion*

Because Ms. Rockwell's claims are both preempted by statute and not cognizable under Vermont tort law, her complaint is hereby DISMISSED.

Additionally, because she can plead no facts which can take this cause of action out from under 49 U.S.C. §§ 14501 and 41713's preemptive language, this cause of action is therefore dismissed with prejudice. *Marchi v. Board of Coop. Educ. Serv. of Albany,* 173 F.3d 469, 478 (2d Cir.1999) ("Although leave to amend is usually freely granted, it may be denied within the trial court's discretion where the proposed amendment would be futile").

 **\*5**  Plaintiff's Motion to Remand is DENIED.


**All Citations**

Not Reported in F.Supp.2d, 1999 WL 33100089

Footnotes

1      The *Somes* court noted, relative to the amenities "not inherent in the nature of an airlines operations," that the ADA did not foreclose all state tort actions given that the ADA requires airlines to maintain insurance for such matters; thus the ADA made provision for the few "state tort actions [which] survive[d] the enactment of the ADA." *Somes* at 84.

**End of Document** © 2019 Thomson Reuters. No claim to original U.S. Government Works.