Case 1:19-cv-00354-JL   Document 16-4   Filed 08/22/19   Page 1 of 9

Muzzarelli v. United Parcel Service Inc., Not Reported in Fed. Supp. (2017)

2017 WL 2786456
Only the Westlaw citation is currently available.
United States District Court, C.D. Illinois,
Peoria Division.

Jill MUZZARELLI, Plaintiff,
v.
UNITED PARCEL SERVICE INC., Defendant.

Case No. 1:15-cv-01169-JBM-JEH
|
Signed June 27, 2017

**Attorneys and Law Firms**

Louis J. Meyer, Meyer & Kiss LLC, Patrick J. Jennetten, Law Office of Patrick Jennetten, P.C., Peoria, IL, for Plaintiff.

Joseph Michael Mitchell, Scott C. Bentivenga, Lewis Brisbois Bisgaard & Smith LLP, Chicago, IL, for Defendant.

## ORDER & OPINION

JOE BILLY McDADE, United States Senior District Judge

*1 This matter is before the Court on Defendant United Parcel Service's ("UPS") Motion for Summary Judgment. (Doc. 34). Plaintiff has filed a Response (Doc. 36) and Defendant has filed a Reply. (Doc. 37). Therefore, the matter is fully briefed. For the reasons stated below, Defendant's Motion is denied.

### I. BACKGROUND[1]

Plaintiff's claim arises from a fall she endured when she tripped over a package delivered by UPS. Around 6pm on January 11, 2013, Plaintiff returned to her boyfriend's home, where she had resided for approximately twelve years. Plaintiff entered the house through a side door. When she left, she exited out the front door. The front door consisted of an inner main door and a screen door. After opening the screen door all the way, she exited and tripped over a large package that was sitting unconcealed on the porch in front of the door. The package had been delivered for Plaintiff's boyfriend earlier in the day by UPS.

On January 8, 2015, Plaintiff filed a negligence lawsuit against UPS in the Circuit Court of the Thirteenth Judicial Circuit of Illinois, which is in Bureau County, Princeton, Illinois. On April 6, 2015, Defendant was served with a summons and copy of the Complaint. On April 24, 2015, Defendant removed the case to this Court on the basis of diversity jurisdiction. Plaintiff is a resident of Princeton, Illinois.[2] Defendant is a Delaware corporation with its principal place of business in Georgia. The amount in controversy exceeds $75,000. On November 11, 2016, Defendant filed its Motion for Summary Judgement. (Doc. 34). On December 13, 2016, Plaintiff filed her Response. (Doc. 36).[3] On December 22, 2016, Defendant filed its Reply to Plaintiff's Response. (Doc. 37). Therefore, the matter is fully briefed and the Court finds that oral arguments are unnecessary.[4]

### II. LEGAL STANDARDS

*2 Summary judgment shall be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *SMS Demag Aktiengesellschaft v. Material*

Case 1:19-cv-00354-JL Document 16-4 Filed 08/22/19 Page 2 of 9

Muzzarelli v. United Parcel Service Inc., Not Reported in Fed. Supp. (2017)

*Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant. *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011). However, the Court is "not required to draw every conceivable inference from the record"; the Court draws only reasonable inferences. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009) (quotations omitted).

To survive summary judgment, the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." *Warsco v. Preferred Tech. Grp.*, 258 F.3d 557, 563 (7th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See McClendon v. Ind. Sugars*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

### III. DISCUSSION

Defendant brings forth three arguments in its motion for summary judgment. First, Defendant argues that the Carmack Amendment preempts Plaintiff's claim. Second, Defendant argues that the Federal Aviation Administration Authorization Act of 1994 ("FAAAA") preempts Plaintiff's claim. Lastly, Defendant argues that the open and obvious doctrine precludes recovery under state tort law.

The Court finds that neither the Carmack Amendment nor the FAAAA preempts Plaintiff's claim. Lastly, the Court finds that the open and obvious doctrine is inapplicable because Plaintiff's Complaint does not plead a premise liability claim. Therefore, Defendant's motion for summary judgement is denied.

#### A. THE CARMACK AMENDMENT DOES NOT APPLY

Defendant argues that Plaintiff's claim is preempted by the Carmack Amendment. However, Plaintiff's claim is not preempted because it arises out of a separate and distinct ground from the loss of, or the damage to, the goods that were shipped.

The Carmack Amendment was enacted in 1906 "to establish uniform federal guidelines designed in part to remove the uncertainty surrounding a carrier's liability when damage occurs to a shipper's interstate shipment." *Glass v. Crimmins Transfer Co.*, 299 F. Supp. 2d 878, 884 (C.D. Ill. 2004) (quotations omitted). The pertinent portion of the Carmack Amendment reads:

> "A carrier providing transportation or service ... shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service ... are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States. Failure to issue a receipt or bill of lading does not affect the liability of a carrier."

**\*3** 49 U.S.C. § 14706(a)(1) (2012). [5] The Carmack Amendment creates a comprehensive remedial scheme for a shipper to recover the loss of cargo that is lost or damaged by a carrier; however, that loss is limited to actual losses or less, if the shipper and carrier negotiated a lower cap on potential losses for lower shipping rates. *Glass*, 299 F. Supp. 2d at 884. Preemption is evidenced where Congress has legislated so comprehensively that it has left no room for supplementary state legislation. Since the enactment of the Carmack Amendment, the United States Supreme Court and the United States Courts of Appeals have addressed whether Congress sought to preempt state and common law through the Carmack Amendment and the extent of such preemption.

In 1913, the United States Supreme Court held that the Carmack Amendment preempted state and common law remedies. *Adams Express Co. v. Croninger*, 226 U.S. 491, 505-06 (1913). The Court found that "almost every detail of the subject is covered as completely that there can be no rational doubt that Congress intended to take possession of the subject and supersede

Muzzarelli v. United Parcel Service Inc., Not Reported in Fed. Supp. (2017)

Case 1:19-cv-00354-JL   Document 16-4   Filed 08/22/19   Page 3 of 9

all state regulation with reference to it." *Id.* at 504. *Adams Express* and its progeny establish that "state statutes and common law are preempted by the Carmack Amendment if they 'in any way enlarge the responsibility of the carrier' for losses or if they 'at all affect the ground of recovery or the measure of recovery.' " *Glass,* 299 F. Supp. 2d at 885 (citing *Charleston & W. C. Ry. Co. v. Varnville Furniture Co.*, 237 U.S. 597, 604 (1915)).

However, the United States Court of Appeals for the Seventh Circuit has found that the Carmack Amendment does not shelter a carrier from all liability. In *Gordon v. United Van Lines*, the Seventh Circuit found an exception to preemption for "state law claims that allege liability on a ground that is *separate and distinct from the loss of, or the damage to, the goods* that were shipped in interstate commerce." 130 F.3d 282, 289 (7th Cir. 1997) (emphasis added). In *Gordon*, instead of moving an eighty-year-old grandmother's possessions, the moving company discarded them and then lied to the grandmother about the status of her possessions. *Id.* at 283-285. The moving company sought preemption for the grandmother's claim of intentional infliction of emotional distress against them. *Id.* at 289. The Seventh Circuit allowed the intentional infliction of emotional distress because the claim relied on a separate and distinct ground "from the loss of, or the damage to, the goods that were shipped." *Id.* at 289. Therefore, while many state and common law claims are preempted by the Carmack Amendment, it is clear that it does not preempt all claims simply because they arise during the shipment of goods; rather the Court must examine the facts and claims at hand to determine whether the claims arise from a separate and distinct ground from the loss of or damage to the shipped goods.

This Court finds that under *Gordon*, Plaintiff's claim is not preempted by the Carmack Amendment because it arises from a "separate and distinct [ground] from *the loss of, or the damage to, the goods* that were shipped." *Id.* Plaintiff does not allege damage to the goods that were shipped; in fact, Plaintiff does not allege that the package was damaged at all. Rather Plaintiff alleges that Defendant was negligent in the placement of the package on the porch which caused personal injuries to the Plaintiff. Therefore, Plaintiff's claim arises from a separate and distinct ground from the loss of, or damage to, the goods that were shipped.

 **\*4**  Defendant argues that the Court is bound to follow *Glass*, which is a 2004 case from the Central District of Illinois. 299 F. Supp. 2d at 878. In *Glass*, a moving company was contracted to move and store a family's personal property. *Id.* at 883. During the storage of the property it was damaged by mildew. *Id.* The mildew-damaged property caused health injuries to the family. *Id.* The family brought a variety of claims against the movers, including negligence which resulted in the injury of two of the family members. *Id.* Magistrate Judge Gorman found that the claims were preempted by the Carmack Amendment because the "physical injuries arose directly from the carrier's mis-handling of the property." *Id.* at 887.

Defendant argues that this case is similar; therefore, Plaintiff's claim should be similarly preempted. However, the Court finds *Glass* to be distinguishable and therefore less persuasive. In *Glass*, damage from the storage of the family's property caused the mildew and the mildew caused the family's injury. Therefore, the family's personal injury claims were directly connected to the damage of their property. However, Plaintiff's injury arose because of the alleged negligent placement of the box, not because goods were damaged during shipment.

The Court finds Plaintiff's claim is more analogous to that in *McGinn v. JB Hunt Transp., Inc.*, No. 10-CV-610-JPS, 2012 U.S. Dist. LEXIS 5362, at * 4-11, 2012 WL 124401 (E.D. Wis. Jan. 17, 2012). In *McGinn*, gas grills were shipped to a store in a trailer. *Id.* at *4. After opening the trailer, employees found a hole in the trailer's roof and wet boxes. *Id.* While unloading the trailer, some of the boxes fell on an employee, striking him in the neck. *Id.* at *5. The defendant argued that the employee's claims of common law negligence were preempted by the Carmack Amendment. *Id.* at *1.

The *McGinn* Court rejected Defendant's preemption argument explaining:

> "Here, based on the Seventh Circuit's holding in *Gordon*, the court finds that the plaintiffs' claims are not preempted by the Carmack Amendment because they allege a separate, independently actionable harm from the loss of or damage to the goods. In the case at hand, the harm is infliction of bodily injury, not property loss or damage. Supporting this finding, is the fact that the plaintiffs' potential measure of damages is not at all correlative to the loss or damage to the goods. Indeed, it is not even clear that the goods involved in the accident were, in fact, damaged. The bottom line is that [plaintiff] is not seeking a

Case 1:19-cv-00354-JL Document 16-4 Filed 08/22/19 Page 4 of 9

Muzzarelli v. United Parcel Service Inc., Not Reported in Fed. Supp. (2017)

remedy for damaged or lost goods. He is seeking a remedy for the bodily injuries sustained due to [one defendant]'s negligent loading of the goods and [another defendant]'s failure to maintain and inspect the trailer on which the good were transported.

To be clear, the plaintiffs' claims certainly have some association with the transfer of goods. Indeed, [plaintiff] would not have been injured but for his unloading of goods that were shipped in interstate commerce. Yet, the relevant inquiry is not whether there is some association between the claim and the transport but, rather, whether the state law claim is really a claim for damages to the shipper's goods in disguise....

Moreover, the purpose of the Carmack Amendment was to 'establish uniform federal guidelines designed in part to remove the uncertainty surrounding a carrier's liability when damage occurs to a shipper's interstate shipment.' *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1415 (7th Cir. 1987). *Thus, to expand Carmack Amendment preemption to cases in which a plaintiff seeks to hold a carrier liable, not for damage or loss of the goods, but rather for personal injuries allegedly caused by the carrier's negligence in the transport of those goods, would seem to be at odds with both the plain language of the statute and the purpose behind its enactment.*"

 **\*5**  *Id.* at \*8-11 (emphasis added). The Court finds that the *McGinn* court's reasoning is equally applicable to the facts at hand. Plaintiff is not alleging damage to the goods; nor is she seeking damages for the goods dressed up as a state law claim. Rather, Plaintiff is seeking remedies for personal injuries allegedly caused by the carrier's negligence in delivering the goods. The Court finds that Plaintiff's claim falls within *Gordon's* exception to the Carmack Amendment because it arises from a separate, independent ground, not from the damage to the goods. Therefore, the Carmack Amendment does not preempt Plaintiff's claim.

### B. FEDERAL AVIATION ADMINISTRATION AUTHORIZATION ACT OF 1994 ("FAAAA") DOES NOT APPLY

The Court finds that, despite Defendant's contentions, Plaintiff claim is not preempted by the FAAAA. The FAAAA states that: "a State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier." 49 U.S.C. § 14501(c)(1) (2012). The clause borrows language from the Airline Deregulation Act of 1978 ("ADA"), *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 368 (2008), and the United States Supreme Court has found that the identical ADA and FAAAA statutes should be construed and interpreted consistently with each other. *Id.* at 370; *S.C. Johnson & Son, Inc. v. Transp. Corp. of Am., Inc.*, 697 F.3d 544, 548 (7th Cir. 2012). Preemption applies not only to state statutes, but also to state common law claims, which are considered to be another "provision having the force and effect of law." *Am. Airlines v. Wolens*, 513 U.S. 219, 233 n.8 (1995).

Therefore, whether a claim is preempted depends on whether the claim is "related to" a price, route, or service of UPS. The United States Supreme Court has explained that "relating to" does not require a direct connection to a price, route, or service, but arises if the claim has a *significant effect* on rates, routes, or services. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992). The Seventh Circuit has explained that "related to" is shown by either "expressly referring to them or by having a significant economic effect upon them." *Id.* (citing *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423 (7th Cir. 1996)). However, claims that might indirectly affect fares, routes, and services are not preempted because they are "too tenuous, remote, or peripheral in manner." *S.C. Johnson*, 697 F.3d at 550 (citing *Morales*, 504 U.S. at 390). Therefore, the Court must decide two issues: whether Plaintiff's claim "relates to" Defendant's rates, routes, or services and whether Plaintiff's claim is "too tenuous, remote, or peripheral" to have a significant effect. *See, e.g., Concovich v. Air Evac EMS Inc.*, No. 15-cv-0294-MJR-DGW, 2016 U.S. Dist. LEXIS 28826, at \*4-5, 2016 WL 843276 (S.D. Ill. Mar. 4, 2016) ("so the question is whether the 'claim[ ] at issue' in this case 'either expressly refer[s]' to an airline's prices, routes, or services or would have a 'significant economic effect' on them—*and even if it does, whether the claim is so tenuously linked to prices, routes, or services that it falls on the non-preemption side of the line.*") (emphasis added). The Court finds that the placement of the package is part of Defendant's services [6]; therefore, the Court must determine whether Plaintiff's claim is too tenuously, remotely, or peripherally related to the Defendant's services to be preempted.

Case 1:19-cv-00354-JL Document 16-4 Filed 08/22/19 Page 5 of 9

Muzzarelli v. United Parcel Service Inc., Not Reported in Fed. Supp. (2017)

**\*6** The Court finds that Plaintiff's personal injury claim is not preempted by the FAAAA for several reasons. First, Plaintiff's personal injury claim is "too tenuously related" to be preempted. Second, courts have repeatedly found against preemption in cases where plaintiffs invoke traditional tort law and sue for personal injuries. Third, the United States Supreme Court does not interpret the ADA to preempt personal injury suits; therefore, the FAAAA should, likewise, not preempt personal injury suits. Fourth, the FAAAA fails to provide a federal remedy for personal injury suits, therefore it is unlikely that Congress intended to preempt them. Lastly, the FAAAA does not clearly manifest a purpose of Congress to preempted state personal injury claims.

First, the Court finds that Plaintiff's personal injury claim is too tenuously related to Defendant's routes, rates, and services to be preempted by the FAAAA. Whether a box is placed in front of a door or alongside a door is too tenuously and peripherally related to Defendant's services to be preempted. Defendant argues that enforcing Plaintiff's claim would use negligence law "to alter the manner in which a motor carrier delivers a package." (Doc. 34 at 10). However, placing a package in front of the door versus not in front of the door would not significantly impact Defendant's rates, routes, or services. *Rowe*, 552 U.S. at 375 (requiring a significant impact on rates, routes, or services for preemption); *see also Centuori v. UPS*, No. C16-0654JLR, 2017 U.S. Dist. LEXIS 48191, at \*15-16, 2017 WL 1194497 ("Any impact those theories have on UPS's services would therefore be collateral and tenuous."). Unlike cases where plaintiffs have sought to force the delivery service to implement new procedures within the process, Plaintiff does not seek to alter or implement a new delivery process; rather Plaintiff's only alleges the negligent performance of Defendant's current procedures, which require packages not to be left in dangerous places. Compare *Kuehne v. UPS*, 868 N.E.2d 870, 876 (Ind. Ct. App. 2007) ("However, once a package is delivered, we cannot say that subsequent occurrences stemming from the alleged negligence of an employee amount to a 'service' of UPS to the extent that federal preemption should apply in all causes of action that a plaintiff might institute against the company") *and Centuori v. UPS*, No. C16-0654JLR, 2017 U.S. Dist. LEXIS 48191, at \*15, 2017 WL 1194497 (W.D. Wash. Mar. 30, 2017) (finding no preemption because the plaintiff's theories do not require a particular delivery procedure but rather "these theories of negligence assert that UPS was negligent for failing to follow its normal practices") *with Rowe*, 552 U.S. at 364 (finding that a Maine law requiring a recipient-verification service for the delivery of cigarettes was preempted because it dictates particular delivery procedures, including requiring a signature) *and Rockwell v. United Parcel Serv., Inc.*, No: 99-CV-57, 1999 U.S. Dist. LEXIS 22036, at \*2-4, 1999 WL 33100089 (D. Vt. 1999) (finding preemption because the plaintiff sought to require bomb-detecting technology in UPS's delivery system, which would alter the delivery process). The impact of Plaintiff's negligence claim is too tenuous and peripheral to affect the Defendant's routes, rates, and services and, therefore, it is not preempted.

Second, courts have repeatedly found *against* preemption when the issue of preemption arises in cases where the plaintiffs invoke traditional elements of tort law and sue for personal injuries. *See Dudley v. Business Express*, 882 F. Supp. 199, 206 (D.N.H. 1994) (citing *Margolis v. United Airlines, Inc.*, 811 F. Supp. 318, 322 (E.D. Mich. 1993) (citing cases)).

Third, the United States Supreme Court does not interpret the ADA preemption clause to extend to personal injury suits. *See Wolens*, 513 U.S. at 231 n. 7. Although these cases involved the ADA's preemption clause, because the FAAAA's preemption clause is identical, the Court finds them persuasive support for finding that the FAAAA would similarly not preempt personal injury suits.

**\*7** Fourth, the Court finds it unlikely that Congress intended to preempt state personal injury claims, because it failed to provide any federal remedy for those hurt by such conduct. *See, e.g., Hodges*, 44 F.3d at 338 (citing *Silkwood v. Kerr-Mcgee Corp.*, 464 U.S. 238, 251 (1984)); *see also Travel All Over the World*, 73 F.3d at 1430 ("The Congressional intent to preempt state law should be the ultimate touchstone in our preemption analysis.").

Lastly, the United States Supreme Court has repeatedly cautioned federal courts that state police powers should not be displaced by federal law unless that was the "clear and manifest purpose of Congress." *California v. ARC Am. Corp.*, 490 U.S. 93, 102 (1989) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). The FAAAA does not manifest a clear purpose to preempt state personal injury claims. Rather, the "purpose of the FAAAA was to address loss or damage to property." *Kuehne*, 868 N.E.2d at 876; *see also S.C. Johnson*, 697 F.3d at 544 (explaining that the "broad applicability of the preemption statutes should be understood in light of their deregulatory purpose"); *Nationwide Freight Sys. v. Baudino*, No. 12-C-2486, 2013 U.S.

Muzzarelli v. United Parcel Service Inc., Not Reported in Fed. Supp. (2017)

Case 1:19-cv-00354-JL   Document 16-4   Filed 08/22/19   Page 6 of 9

Dist. LEXIS 135449, at *21, 2013 WL 5346450 (N.D. Ill. Sept. 23, 2013) ("This court must also consider the deregulatory purpose of the FAAAA, and [whether] the statutes at issue have 'a significant impact on carrier rates, routes, or services.' ") (quoting *Rowe*, 552 U.S. at 375).

Defendant argues that the Seventh Circuit recently established a bright-line rule that "[law]s that affect the way a carrier interacts with its customers fall squarely within the scope of FAAAA preemption" in *Costello v. BeavEx, Inc.* 810 F.3d 1045, 1054 (7th Cir. 2016). However, the Court finds that Defendant is reading *Costello* too broadly. In *Costello*, the Seventh Circuit analyzed whether an Illinois law establishing a test for when an individual must be classified as an employee was preempted by the FAAAA. *Id.* at 1050. The Seventh Circuit said

> "Our opinion in *S.C. Johnson* and the decisions of our sister circuits confirm that there is a relevant distinction for purposes of FAAAA preemption between generally applicable state laws that affect the carrier's relationship with its customers and those that affect the carrier's relationship with its workforce. Laws that affect the way a carrier interacts with its customers fall squarely within the scope of FAAAA preemption. Laws that merely govern a carrier's relationship with its workforce, however, are often too tenuously connected to the carrier's relationship *with its consumers* to warrant preemption."

*Id.* at 1054. Therefore, within the context of the *Costello*, it becomes evident that the Seventh Circuit was drawing a distinction pertaining to labor law. However, the Court does not find that this creates a broad bright-line rule that provides that any law which affects the way a carrier interacts with a customer is automatically preempted, as Defendant implies. Under Defendant's bright-line rule, a breach of contract claim would be preempted because it affects the way a carrier interacts with a consumer. However, breach of contracts cases have repeatedly been found not to be preempted by the Supreme Court and the Seventh Circuit. *See, e.g., Wolens*, 513 U.S. at 226; *Travel All Over the World*, 73 F.3d at 1432; *S.C. Johnson*, 697 F.3d at 552-53 (citing *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605 (7th Cir. 2000)). Furthermore, the Seventh Circuit has already explained that ADA and FAAAA preemption analysis does not allow for the creation of broad, bright-line rules. *See, e.g., Travel All Over the World*, 73 F.3d at 1433. In *Travel All Over the World*, the Seventh Circuit found that "*Morales* does not permit us to develop broad rules concerning whether certain types of common-law claims are preempted by the ADA. Instead, we must examine the underlying facts of each case to determine whether the particular claims at issue 'relate to' airline rates, routes or services." *Id. Costello* did not overturn *Travel All Over the World*; therefore, the Court is unpersuaded by Defendant's argument to interpret *Costello* as a broad bright-line rule governing which types of common law claims are preempted.

### C. OPEN AND OBVIOUS DOCTRINE [7]

**\*8** Defendant's final argument is that the package was an open and obvious danger and, therefore, Defendant is not liable for any physical harm caused by it. However, an open and obvious danger is a defense to premise liability, which is inapplicable because Plaintiff's Complaint appears to assert an ordinary negligence claim.

Defendant argues that Illinois has adopted the Restatement (Second) of Torts with respect to premise liability and it should be able to assert an open and obvious danger as a defense. Under § 383 of the Restatement (Second) of Torts:

> "One who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land."

Restatement (Second) of Torts § 383 (Am. Law Inst. 1965); *Randich v. Pirtano Constr. Co.*, 804 N.E.2d 581, 589 (Ill. App. Ct. 2004). Illinois has also adopted the "open and obvious danger" defense from the Restatement, which states that:

> "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

Case 1:19-cv-00354-JL Document 16-4 Filed 08/22/19 Page 7 of 9

Muzzarelli v. United Parcel Service Inc., Not Reported in Fed. Supp. (2017)

Restatement (Second) of Torts § 343A (Am. Law Inst. 1965); *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 16. Therefore, Defendant argues that the Court should find that the box was an open and obvious danger, for which a possessor would not be liable if it caused an invitee physical harm. Therefore, Defendant argues that because it was performing an act for the possessor [8] (i.e. delivering the package), it should be entitled to enjoy the same freedom from liability as the possessor would be entitled.

However, Defendant's argument relies on Plaintiff's claim being a premise liability claim, which the Court does not read it to be. Based upon the face of Plaintiff's Complaint, she appears to be asserting an ordinary negligence claim. (Doc. 1-1 at 4). Plaintiff's Complaint alleges:

> "At all times the Defendant had a duty to place boxes and deliveries in a manner so as *not to create a dangerous condition* on Plaintiff's premises.
>
> ***9** Defendant, by and through one of its agents/employees, in violation of that duty, *committed one or more of the following acts or omissions*:
>
> A. Placed a box directly in front of Plaintiff's doorway;
>
> B. Failed to leave the box in a location that would not create a dangerous condition;
>
> C. Failed to properly train its employees as to the manner in which to leave deliveries;
>
> D. Failed to properly supervise its employees;
>
> E. Failed to warn Plaintiff of the existence of said dangerous condition;
>
> F. Was otherwise negligent in the delivering [of] said box to Plaintiff's residence.
>
> *As direct and proximate result of one or more of the foregoing negligent acts and/or omissions*, the Plaintiff was greatly and seriously injured in both body and mind ..."

(Doc. 1-1 at 4) (emphasis added). Therefore, Plaintiff's complaint appears to allege that Defendant was negligent through its actions. Premise liability is "a landowner's or landholder's tort liability for conditions or activities on the premise." Black's Law Dictionary (10th ed. 2014). However, on the face of Plaintiff's complaint, she does not assert that UPS was negligent in its maintenance of a dangerous condition on its property. Rather, Plaintiff asserts that Defendant *caused* a dangerous condition, which is an ordinary negligence claim; Plaintiff does not assert that Defendant *maintained* a dangerous condition, which is a premise liability claim. *Reed v. Wal-Mart Stores*, 700 N.E.2d 212, 215 (Ill. App. Ct. 1998) ("The plaintiffs' complaint seems to allege *both* an ordinary negligence cause of action (Wal-Mart *caused* the dangerous condition) and a premises liability cause of action (Wal-Mart *maintained* a dangerous condition)."). Therefore, Plaintiff's claim is a claim of ordinary negligence.

For Defendant to assert that § 383 applies, Defendant must be facing a premise liability claim. However, Plaintiff's claim does not allege that Defendant negligently maintained its premise. For a duty to arise under Illinois's Premise Liability Act, "the defendant must possess and control the real property on which the injury occurred." *Kotecki v. Walsh Constr. Co.*, 776 N.E.2d 774, 779 (Ill. App. Ct. 2002) (citing *Godee v. Ill. Youth Soccer Ass'n*, 764 N.E.2d 591 (Ill. 2002)). However, Defendant did not possess or control the real property nor does Plaintiff allege that.

Furthermore, the Court finds that Defendant cannot use § 383 to assert a possessor's defenses because Defendant's limited actions would not be enough to consider Defendant a possessor under § 383. [9] This is because Illinois courts have declined to use § 383 to assert a premise liability claim against a party who was acting for the possessor *but who only had limited control* of the property. *See Grzelak v. Classic Midwest, Inc.*, 2013 IL App (1st) 122701-U, ¶ 20-23 (finding no liability because plaintiff did not show that defendant "had ultimate control or intended to have ultimate control over the land at issue"); *O'Connell v. Turner Constr. Co.*, 949 N.E.2d 1105, 1110 (Ill. App. 2011) (finding that "one who controls the land on behalf of another is

**Muzzarelli v. United Parcel Service Inc., Not Reported in Fed. Supp. (2017)**

Case 1:19-cv-00354-JL   Document 16-4   Filed 08/22/19   Page 8 of 9

not the possessor and that limited control of the land does not equate possession."). Although Defendant delivered the package for the possessor (Plaintiff's boyfriend), there is no indication, nor does Plaintiff ever assert, that Defendant "possessed" or "controlled" the real property at any point in time, including the time of the incident, which was after Defendant had made the delivery and left the property. Therefore, it becomes apparent that Plaintiff is asserting ordinary negligence claim, not premise liability claim, against Defendant.

**\*10** However, the open and obvious defense has not been recognized as a defense to claims of ordinary negligence in Illinois. *See Camp v. TNT Logistics Corp.*, 553 F.3d 502, 511 (7th Cir. 2009) ("We are not aware of any Illinois court that has applied the open and obvious doctrine outside of premises or product liability arenas ..."); *Smith v. MHI Injection Molding Mach., Inc.*, No. 10-C-8276, 2014 U.S. Dist. LEXIS 54498, at \*5 n.7, 2014 WL 1516592 (N.D. Ill. Apr. 18, 2014) ("Moreover, those cases dealt with the open and obvious hazard doctrine, and no Illinois court has extended that doctrine to cover ordinary negligence claims."). Therefore, Defendant's argument that the danger was open and obvious is inapplicable to Plaintiff's Complaint, which raises an ordinary negligence claim on its face.

## IV. CONCLUSION

For the aforementioned reasons, the Court finds that neither the Carmack Amendment nor the FAAAA preempt Plaintiff's claim. Additionally, the Court finds that the open and obvious doctrine is inapplicable because Plaintiff asserts an ordinary negligence claim. Therefore, Defendant's Motion for Summary Judgment (Doc. 34) is denied.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2786456

Footnotes

1   These background facts are drawn from the parties' respective statements of material facts, and are undisputed unless otherwise indicated. Facts that are immaterial to the disposition of the Motion for Summary Judgment are excluded.

2   The Court notes that this case should have been brought in the Rock Island Division pursuant to Local Rule 40.1(C), as Princeton is in Bureau County, which is in the Court's Rock Island Division. Had the Notice of Removal complied with Local Rule 40.1(F), the proper division would have been identified sooner. Since this case has been pending for two years now, the Court finds it would not be in the interests of judicial economy or justice to transfer the case at this point. Counsel, however, are admonished to follow the local rules.

3   The Court notes that Plaintiff failed to comply with Local Rules 7.1(B)(4)(a) and 7.1(D)(5), which requires a response to be double-spaced. Plaintiff's response uses 1.5 spacing. However, Plaintiff's reply appears to comply with the type volume limitation, because it appears to be 5,636 words. Local Rule 7.1(B)(4)(b)(1). The Court admonishes Plaintiff to consult the Local Rules and ensure compliance before submitting material to the Court.

4   In its Motion to Dismiss, Defendant states "Oral Argument Requested Pursuant to L.R. 7.1". However, Defendant failed to comply with Local Rule 7.1(A)(2), which requires parties to state why an oral argument is sought. The Court again admonishes Defendant to also consult the Local Rules and ensure compliance before submitting material to the Court.

5   The Carmack Amendment was originally codified at 49 U.S.C. § 11707(a)(1) (1994). However, the Interstate Commerce Commission Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803, amended the Act and recodified it at 49 U.S.C. § 14706(a)(1).

6   The Court finds that the placement of the package falls within Defendant's services. The United States Court of Appeals for the Seventh Circuit has adopted the following definition of "services":

> " 'Services' generally represents a bargained-for or anticipated provision of labor from one party to another.... This leads to a concern with the contractual arrangement between the airline and the user of the service. Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself."

Muzzarelli v. United Parcel Service Inc., Not Reported in Fed. Supp. (2017)

Case 1:19-cv-00354-JL   Document 16-4   Filed 08/22/19   Page 9 of 9

*Travel All Over the World*, 73 F.3d at 1433 (citing *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc)). The Court doubts that the Seventh Circuit intended for this broad definition to preempt personal injury claims arising from negligent actions by an employee simply because the employee works in the airline or shipping fields. The Court's opinion is supported by *Hodges*, from which the definition of "services" is borrowed. In *Hodges*, a passenger was injured when a case containing several bottles of rum was dislodged from an overhead compartment and fell on the passenger, injuring her arm and wrist. 44 F.3d at 335. The court was asked to determine whether the plaintiff's claim for negligent operation of the aircraft was preempted by the ADA. *Id.* The United States Court of Appeals for the Fifth Circuit defined "services", as seen above, and found that plaintiff's negligence claim was not preempted. *Id.* at 336-37. The *Hodges* court held that "federal preemption of state laws, even certain common law actions 'related to services' of an air carrier, does not displace state tort actions for personal physical injuries or property damage caused by the operation and maintenance of aircraft." *Id.* at 337. Similarly, the Court finds it unlikely that the Seventh Circuit intended for the definition of services to be interpreted so broadly as to preempt all personal injury negligence claims by delivery services.

However, this broad definition of services is binding upon this Court until declared otherwise by the Seventh Circuit or the United States Supreme Court. Therefore, the Court finds that the placement of the package during the delivery is part of UPS's services. *Contra Centuori v. UPS*, No. C16-0654JLR, 2017 U.S. Dist. LEXIS 48191, at *14-16, 2017 WL 1194497 (W.D. Wash. Mar. 30, 2017) (finding that under the Ninth Circuit's narrower definition of "services" that UPS's placement of packages was akin to an amenity and not a service).

7    Because this Court is a federal court sitting in diversity, the Court is obligated to apply the law of the state in which it sits—Illinois. *Autocephalous Greek-Orthodox Church v. Goldberg & Feldman Fine Arts, Inc.*, 917, F.2d 278, 286 (7th Cir. 1990) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). There the Court applies Illinois law when addressing Defendant's state law argument.

8    The Court notes that Plaintiff's boyfriend is the possessor of the property. The Restatement (Second) of Torts defines a "possessor" as "a person who is in occupation of the land with intent to control it." Restatement (Second) of Torts § 328E (Am. Law Inst. 1965). Plaintiff argues that the open and obvious doctrine cannot apply because it is only applicable to invitees on a possessor's land and Plaintiff argues that she is not an invitee because she lives there. (Doc. 36 at 11). However, living in another's house does not make one a possessor. Comment h of § 330 of the Restatement (Second) of Torts states that "[t]he members of the possessor's household" are licensees. Therefore, as a member of her boyfriend's household, Plaintiff would typically be considered a licensee on his premise; however, Illinois has eliminated the distinction between invitees and licensees. *See* Illinois Premises Liability Act, 740 Ill. Comp. Stat. § 130/1 *et seq.* (1996). Therefore, Plaintiff is not a possessor of the property simply because she lives there with her boyfriend.

9    Rather than being considered a possessor, Illinois Courts are more like to find that Defendant was a business invitee, who was providing a service for the possessor's benefit. *See, e.g., McGinley v. HOB Chi., Inc.*, 2016 IL App (1st) 152167-U, ¶ 13 ("Plaintiff entered HOB's premises as a business invitee providing a delivery service for HOB's benefit."); *Mooney v. Graham Hosp. Ass'n*, 513 N.E.2d 633, 635 (Ill. App. 1987) ("when plaintiff's status is related to defendant's alleged negligence in a way not common to any other business invitee, e.g., a delivery man").

---

**End of Document**      © 2019 Thomson Reuters. No claim to original U.S. Government Works.