2004 WL 1689395
Not Officially Published
(Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)
Only the Westlaw citation is currently available.

California Rules of Court, rule 8.1115, restricts citation of unpublished opinions in California courts.

Court of Appeal, Second District, Division 6, California.

Jamison GLENN et al., Plaintiffs and Appellants,

v.

G.I. INDUSTRIES et al., Defendants and Respondents.

2d Civil No. B167900.
|
(Ventura County Super. Ct. No. SC032469).
|
July 29, 2004.

Superior Court County of Ventura; Thomas J. Hutchins, Judge.

**Attorneys and Law Firms**

Bowles & Verna, Richard T. Bowles, Bradley R. Bowles for Plaintiffs and Appellants Jamison Glenn and Kimberly Glenn.

McNamara, Spira & Smith, J. Patrick Jacobs, Mary O. O'Neill for Defendants and Respondents G.I. Industries and City of Simi Valley.

**Opinion**

COFFEE, J.

 **\*1** Nine-year-old Alexander Glenn was struck by a car and severely injured when he attempted to cross a street while walking home from school. His parents, Jamison and Kimberly Glenn, individually and as guardians of their son, brought a negligence action against respondents G.I. Industries, dba G.I. Rubbish Company (Rubbish), and the City of Simi Valley (City), and others, alleging that a trash bin placed on the street blocked the visibility of the driver of the car that struck him. The trial court entered summary judgment in favor of the City and Rubbish, concluding that neither party owed Alexander a duty of care.

The Glenns appeal, contending that (1) noncompliance with permit restrictions for placing trash bins on the street and City ordinances gave rise to a duty on the part of the City and Rubbish under either general negligence principles or the doctrine of negligence per se; (2) the trial court abused its discretion in denying their request to conduct additional discovery prior to entry of the summary judgment; and (3) the court erred in denying their motion for reconsideration of the summary judgment. We reject these contentions and affirm.

*Factual and Procedural Background*

In June of 2001, Alexander was walking home from school in Simi Valley when he was struck by a vehicle driven by Rene Bishop, age 18. At the time of the accident, Rene was driving westbound on Walnut Street between Monticello and Quincy Avenues. Alexander started to walk across the middle of Walnut Street, about halfway between Monticello and Quincy Avenues.

He did not use the marked crosswalk at the corner of Walnut Street and Monticello Avenue and failed to yield the right-of-way to Rene's vehicle. As he crossed the street, he emerged from behind a trash bin (dumpster) that had been placed on the north side of Walnut Street about 103 feet from Monticello Avenue and 105 feet from Quincy Avenue. He was immediately struck by Rene's vehicle and sustained serious injuries. It was undisputed that Rene was traveling 25 to 35 miles per hour (mph) at the time of the accident, within the 35 mph speed limit. The Glenns allege that the trash bin obstructed Rene's view and contributed to the accident.

Walnut Street is a two-lane improved roadway running east/west with one lane of travel in each direction and divided by a painted double yellow line. The westbound lane in the area of the accident is approximately 19 feet wide and the eastbound lane is approximately 20 feet wide. The trash bin was placed immediately adjacent to the northern curb of the street by Rubbish at the request of its customer, Jeffrey Chang, who resides at 3406 Monticello Avenue. The bin was 8 feet wide, 6 feet high, and 23 feet long, and was typical of the roll-off bins commonly used throughout the City and state for collection of debris. Rubbish placed the bin on the street pursuant to (1) a "Franchise Agreement between the City and Conejo Enterprises for Providing Residential, Multifamily, and Commercial Discards Services"; and (2) a permit that gave Rubbish the right to place roll-off bins on public rights-of-way to further "the public health, safety, and well-being ." [1] The evidence was undisputed that, other than providing a blanket authorization for the use of roll-off bins, the City was not typically involved in the placement or inspection of such bins.

**\*2** The Glenns filed a complaint against Rene Bishop, Donald and Ruth Bishop (owners of the vehicle Rene was driving), Rubbish, and the City, seeking damages for personal injuries sustained by Alexander based on negligence theories of liability. The Glenns alleged that (1) Rene had negligently operated the vehicle and her parents had negligently entrusted the vehicle to her; (2) the City was negligent in its maintenance and control of Walnut Street by allowing Rubbish to place a trash bin there and obstruct the view of drivers using the street; and (3) Rubbish had placed its dumpster in a negligent manner such that it obstructed the view of drivers on Walnut Street.

Thereafter, the City moved for summary judgment on the grounds that (1) it was not negligent; (2) it was immune from suit under Government Code section 818.4, which exempts a public entity from liability for injuries caused by the issuance of a permit; (3) the placement of the bin was not the proximate cause of Alexander's injuries; and (4) the Glenns had not met their burden of pleading facts showing any statutory liability on its part. The City argued that it had not breached a duty of care by allowing the bin to be placed on the street, especially given that the bin was smaller than many vehicles allowed by law to park on public streets (e.g., trucks, vans, and mobile homes); it was placed no farther from the edge of the curb where vehicles are allowed to park; it was not placed near the intersection; and there was at least 11 feet left in the adjacent lane for traffic.

Rubbish also moved for summary judgment on the grounds that (1) it did not owe a duty of care to the Glenns; (2) it exercised due care in the placement of the trash bin; (3) the placement of the bin was not the proximate cause of Alexander's injuries; and (4) Alexander assumed the risk of his actions by crossing the middle of the street.

The Glenns opposed the summary judgment motions, arguing that the City had a duty to provide a safe roadway for pedestrians clear of obstacles, it failed to control the speed of vehicles on Walnut Street which had signs posted showing it was a school area, and it created a dangerous condition by failing to regulate the speed in a high pedestrian traffic area. The Glenns also requested that if the court were inclined to grant the motion, they be allowed to conduct more discovery because respondents had failed to respond to all the written discovery.

On February 21, 2003, the trial court granted the motions for summary judgment, ruling that the City and Rubbish did not owe a duty of care to Alexander arising from the placement of the trash bin, and that safety issues related to Walnut Street were not material given the allegations of the complaint.

One week prior to the court's ruling, on February 14th, the Glenns had noticed four depositions of (1) the person most knowledgeable about city council meetings related to safety and the speed limit on Walnut Street; (2) the person most knowledgeable about complaints to the City related to safety conditions of the streets; (3) the person most knowledgeable about

complaints made to Rubbish related to roll-off trash bins in the City; and (4) Donald Block, an inspector with the Department of Public Works. Because the Glenns intended to take the depositions notwithstanding the court's entry of summary judgment, the City and Rubbish moved for a protective order to preclude them.

**\*3** The Glenns opposed the motion for protective order, arguing that the court had not yet issued a formal order granting the motion for summary judgment and that they would be seeking reconsideration. The Glenns argued that some of the information and documents to be gathered from the noticed depositions were critical to the remaining aspects of the case against the Bishops as well as to their motion for reconsideration.

On March 3, 2003, the trial court denied the motion for a protective order filed by the City and Rubbish.

On March 17, 2003, the Glenns moved for reconsideration of the court's ruling granting summary judgment in favor of the City and Rubbish. The Glenns argued that newly discovered facts warranted granting reconsideration. The Glenns noted that Block had investuted the accident and determined that the trash bin had been placed eight and one-half feet into the street, in violation of the City's permit allowing bins to protrude only eight feet from the street. The Glenns also noted their newly hired experts (Edward Ruzak and Fred Cady) had been to the accident scene and had provided declarations demonstrating the duty and breach of duty by the City and Rubbish.

Cady opined that placement of the trash bin created an environment where even a pedestrian crossing in the crosswalk was at risk of being hit by a driver traveling over 25 mph due to the obstruction in visibility.

Ruzak, a civil engineer, noted that placing the trash bin on Walnut Street violated a municipal ordinance that precluded the parking of oversized vehicles on any public street. Oversized vehicles were defined as being 19 feet long, 7 feet wide, and 8 feet high. (Simi Valley Mun.Code, § 4-9.402 (hereafter SVMC).) In a declaration, Ruzak stated that in a recent speed survey, 50 percent of the cars traveling on Walnut Street were clocked at traveling 40 mph or higher; Walnut Street was a high speed roadway with unusually high pedestrian and bicycle traffic; the City should not have allowed the bin to be placed on this street; and Rubbish failed to exercise any normal degree of care in determining where to place the bin. He opined that had the bin been placed on Monticello Avenue or in the customer's driveway, the accident would not have occurred. Ruzak noted that SVMC section 7-1.248 precludes placing any encroachment of any nature that impedes, obstructs, denies, or impairs the sight distance for safe pedestrian or vehicular traffic. Finally, Ruzak stated that Walnut Street collected traffic from side streets for access to the major arterial and freeway system. He opined that collector-type roadways, such as Walnut Street, in a residential area where school children are present, are known to require special attention and control. He opined it was foreseeable to everyone involved that young children leave sidewalks and walk into roadways without being in a crosswalk. He stated that obstructions should not be permitted in areas where children are known to be present.

**\*4** The Glenns further argued that Gloria Du Bois, a City employee, was deposed just prior to the hearing on the motion for summary judgment. She testified that the City's guidelines for placement of dumpsters had not been updated since 1991, and the City has no procedure for checking to see that the placement of dumpsters complies with the requirements of the permit. Stacey Walters (district manager for Rubbish) testified that the location of the dumpster is usually left to the customer, the drivers are trained to not drop the bins in an unsafe location, but that Rubbish has a policy against placing dumpsters in driveways because of the possibility of damage to a driveway.

Finally, the Glenns argued that new evidence showed that the City breached its duty to maintain the safety of the roadway by permitting a dumpster to be placed in a location where it violated the City's ordinances and created a visibility problem on a street where pedestrian traffic was heavy and where drivers exceeded the speed limit. They argued the City was negligent in failing to modify the permit process and in failing to enforce the permit it issued to Rubbish. The Glenns argued that Rubbish breached its duty by (1) placing the bin eight and one-half feet from the curb in violation of the restrictions of the permit; (2) abrogating to the customer the decision as to where to place the dumpster; and (3) failing to place the bin in a safer, available location.

Following a hearing, the trial court denied the motion for reconsideration and entered a formal judgment dismissing the action against the City and Rubbish.

*Discussion*

"Summary judgment is appropriate when the defendant's moving papers negate an essential element of the plaintiff's case, notwithstanding factual conflict upon other aspects of the case." (*Scott v. Chevron U.S.A.* (1992) 5 Cal.App.4th 510, 514-515; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) A determination that Rubbish and the City owed no duty of care to Alexander would negate an essential element of the Glenns' negligence claim, and would be a complete defense to the action. (See *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [to prevail on a negligence cause of action, plaintiff must show that defendants owed a duty of care, breached the duty by failing to exercise reasonable care under the circumstances, and the breach was a substantial factor in causing the injuries].) The existence and scope of duty are legal questions for the court, cognizable on summary judgment. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477; *Scott,* at p. 515.) We review the trial court's grant of summary judgment de novo.

The Glenns contend the trial court erred in determining that Rubbish and the City did not owe a duty of care to Alexander. They argue that noncompliance with permit restrictions for placing trash bins on the street and City ordinances gave rise to a duty on the part of Rubbish under either general negligence principles or the doctrine of negligence per se. Their arguments are unavailing.

**\*5**  First, while violation of a statute or permit can lead to a presumption of negligence, the Glenns have not demonstrated that a violation of any ordinance occurred or that a violation of the City's permit was a substantial factor in causing Alexander's injuries. (See Evid.Code, § 669 [failure of a person to exercise due care is presumed if the person violated a statute, ordinance or regulation of a public entity and the violation proximately caused injury to a person or property]; *Satterlee v. Orange Glenn School Dist.* (1947) 29 Cal.2d 581, 588.)

The permit issued by the City requires that dumpsters located in the public right-of-way "shall not be more than eight (8) feet from the adjacent curbface." Although it was undisputed that the trash bin on Walnut Street was eight and one-half feet from the curb, the Glenns presented no evidence in opposition to the summary judgment motion or on reconsideration showing that the accident would not have occurred if the bin had been placed eight feet from the curb. There was no evidence that the extra six inches was a substantial factor in causing Alexander's injuries. Violation of this restriction in the permit does not, therefore, give rise to negligence per se under the circumstances of this case.

Further, the ordinances relied upon by the Glenns are inapplicable. SVMC section 4-9.402, subdivision (a) provides: "No person shall park or leave standing any oversized vehicle, as further defined herein, upon any public street or highway in the City. For the purpose of this section the term 'oversized vehicle' shall mean any vehicle, as defined by Section 670 of the Vehicle Code, or combination of vehicles, which exceeds nineteen (19') feet in length, seven (7) feet in width, or eight (8) feet in height, exclusive of projecting lights or devices allowed by Sections 35109, 35110, or 35112 of the Vehicle Code, as may be amended." Contrary to the Glenns' contention, a trash bin does not come within the definition of a vehicle under Vehicle Code section 670. More important, SVMC section 4-9.402 is part of a municipal ordinance regulating the "long-term storage of oversized vehicles." The ordinance expressly exempts from its application the parking of oversized vehicles for less than 72 hours or the parking of commercial vehicles providing services to a residence in the neighborhood, including, but not limited to, yard care, pool care, and maintenance, repair, and construction services. (SVMC, § 4-9.403.) Even assuming, arguendo, a trash bin is a vehicle for purposes of this ordinance, it was undisputed that the bin had been in place for less than a day and was there for yard care, i.e., to dispose of tree trimmings.

Similarly, SVMC section 7-1.248 allows the Director of Public Works to require certain aids to visibility in the event an "encroachment" impairs visibility to vehicular traffic.[2] Further, it prohibits permitting an encroachment that might impair "the

sight distance for *safe* pedestrian or vehicular traffic." (*Ibid.,* italics added.) It exempts from the definition of an encroachment "the temporary use of the street for the ordinary maintenance of any existing authorized or permitted encroachment." [3] (*Ibid.*) It is undisputed that Alexander did not use the crosswalk at the time of the accident and failed to yield the right-of-way to Rene. The trash bin was placed temporarily on the street pursuant to a permit. The ordinance is, therefore, inapplicable.

**\*6** Finally, SVMC section 6-3.12 sets forth restrictions for the placement of containers, bins, or roll-off drop boxes, their locations, and the length of time they may be placed on the street. [4] In pertinent part, section 6-3.12, subdivision (d) provides that "[a]ny container placed for collection along a street shall be placed ... as close to the curb line or edge of the roadway as practicable. *No container shall obstruct the use of the public-right-of-way.*" (Italics added.) Here, the trash bin did not obstruct the use of the traffic lanes on Walnut Street.

Nor did the Glenns establish that Rubbish or the City breached a duty to Alexander under general negligence principles. The general rule is that all persons are required to use ordinary care to prevent injury to others from conduct. (Civ.Code, § 1714, subd. (a); *Rowland v. Christian* (1968) 69 Cal.2d 108, 112.) "Duty is not an immutable fact of nature; it is 'only a shorthand expression of the sum total of public policy considerations which lead the law to protect a particular plaintiff from harm.' " (*Scott v. Chevron U .S.A., supra,* 5 Cal.App.4th at p. 515.) In determining the boundaries of the duty to prevent injury to others in any given case, courts consider several factors, including the foreseeability of harm; the degree of certainty of injury; the closeness of the connection between the defendant's conduct and the injury; the moral blame attached to the defendant's conduct; the policy of preventing future harm; the extent of the burden to the defendant and the consequences to the community of imposing a duty of care with resulting liability for breach; and the availability, cost, and prevalence of insurance for the risk. (*Ibid.,* citing *Rowland,* at p. 113.)

Application of the *Rowland* factors weighs against the imposition of a duty on Rubbish or the City. Rarely is an injury completely unforeseeable, and it is certainly foreseeable that a child might leave a sidewalk and run across the middle of a street. "However, foreseeability is not commensurate with duty...." (*Scott v. Chevron U.S.A., supra,* 5 Cal.App.4th at p. 516.) The " 'court's task-in determining "duty"-is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.' " (*Lopez v. McDonald's Corp.* (1987) 193 Cal.App.3d 495, 507, quoting *Ballard v. Uribe* (1986) 41 Cal.3d 564, 572, fn. 6.) As the trial court observed in ruling on the summary judgment motion, "a general description of the harmful event is a pedestrian being hit because the bin was placed adjacent to the curb. And while not unforeseeable, it is not 'sufficiently likely.' " The court further observed: "[T]he connection between [Rubbish's and] the City's conduct [in] allowing [Rubbish] to place the bin near the curb on Walnut street, and Alexander's injury is attenuated by the very fact that Alexander choose [*sic* ] to leave the curb, not at the corners with marked crosswalks, but in the middle of the block by the bin. Defendant[s] [have] no moral blame for Alexander's injuries (the bin was placed within parking regulation for vehicles in general-18 inches from the curb ..., the bin is similar to those used throughout the state, the bins are commonly delivered to curbside and then picked up, the bin was placed well away from marked crosswalks and intersections where pedestrians are to cross, the City painted school X-ing signs on the roadway, and permanent crosswalk stripes at the intersections). Further, the oncoming driver's view would be blocked by parked cars and trucks with respect to a child leaving the curb between parked cars. The result would have been the same. Imposing liability only on dumpsters, and not on parked vehicles, would not further the policy of preventing [future] harm."

**\*7** We agree with the conclusion of the trial court and adopt its reasoning. The trash bin was placed over 100 feet from each corner where a marked crosswalk existed for pedestrian traffic. In placing its bins around the City, Rubbish is entitled to assume that pedestrians will use the marked crosswalks and that vehicles traveling on the street will obey the basic speed law. The undisputed expert evidence showed that had Alexander used the crosswalk, Rene would have seen him in time to stop her car. [5] The trial court properly granted summary judgment in favor of Rubbish and the City on the issue of duty.

In light of this conclusion, we need not reach the question whether the City is immune from liability under Government Code section 818.4.

*The Request to Conduct Additional Discovery*

The Glenns next contend that the trial court abused its discretion in denying their request to conduct additional discovery prior to the court ruling on the summary judgment motions. The court found that additional discovery would not assist the Glenns in developing evidence that would undermine its conclusion that there was no duty on the part of Rubbish or the City. Notwithstanding the court's ruling, the Glenns conducted further discovery, successfully defended motions for a protective order, completed noticed depositions, presented declarations from their experts, and brought motions to reconsider based on that additional discovery. Because they conducted their additional discovery and presented it to the court, we conclude this issue is moot.

*Denial of the Motion for Reconsideration*

The Glenns contend the trial court erred in denying their motion for reconsideration because there was new evidence and law that it had not previously considered. We disagree. Contrary to the Glenns' contention, the duty issue was extensively briefed by the parties in the motions for summary judgment and properly resolved by the court. The additional discovery and evidence cited by the Glenns on reconsideration did not alter the trial court's or our conclusion that, as a matter of law, neither the City nor Rubbish owed a duty under the circumstances of this case. The court properly denied the motion for reconsideration.

The judgment is affirmed. Costs are awarded to the City and Rubbish.

We concur: YEGAN, Acting P.J., and PERREN, J.

**All Citations**

Not Reported in Cal.Rptr.3d, 2004 WL 1689395

Footnotes

1      Rubbish is the owner of Conejo Enterprises.

2      SVMC section 7-1.248 provides: "When the location or position of an encroachment impairs visibility to vehicular traffic, the Director of Public Works may require that the encroachment be painted or equipped with reflectors or other aids to visibility ... or the Director of Public Works may require the encroachment to be relocated at the sole expense of the permittee. No encroachment shall be maintained across any sidewalk area or shoulder of a public street. *No encroachment of any nature shall be permitted or maintained which impedes, obstructs, denies, or impairs the sight distance for safe pedestrian or vehicular traffic.*" (Italics added.)

3      SVMC section 7-1.106 defines encroachment as follows: " 'Encroachment' shall mean and include any obstruction, tower, pole, pole line, pipe, fence, wire, cable, conduit, stand, or building, or any structure or object of any kind or character not particularly mentioned in this chapter, which obstruction, building, or object is placed on, in, along, under, over, or across the street. *The provisions of this section shall not apply to the temporary use of the street for the ordinary maintenance of any existing authorized or permitted encroachment ....* " (Italics added.)

4      SVMC section 6-3.12 provides:

"(a) *General.* No person shall place or cause to be placed any container, bin, or roll-off drop box on any sidewalk, street, road, highway, or alley at any place or in any manner other than as provided in this chapter. In order to prevent problems of traffic, noise, wear and tear on the highway, or other problems having the potential to adversely affect health, safety, or the environment, which may develop in any specific area as a result of discards collection, the Director may regulate the routes, intervals, delivery points, and times for collection by all collectors operating within the City.

"(b) *Time.* No person shall place or cause to be placed any discards container, bin, or bundled discards on any sidewalk, road, street, or highway at any time other than on the day established for the collection of discards on the particular route or before 4:30

> p.m. on the day immediately prior to such collection, or permit such container to remain thereon not later than 10:00 p.m. on the designated day of collection.
>
> "(c) *Storage.* No person shall cause or permit containers to be placed at any location whereby the containers may be visible from private streets and public rights-of-way, unless located behind a side yard fence, gate, or wall except when placed out for collection as provided in Section 6-3.12(b).
>
> "(d) *Location.* Any container placed for collection along a street shall be placed between the curb line (or edge of roadway) and the property line as close to the curb line or edge of the roadway as practicable. No container shall obstruct the use of the public right-of-way...."

5  Cady stated that had Alexander been in the crosswalk when he attempted to cross the street, and assuming Rene was driving 25 mph as she claimed, it would have taken Rene 83 feet to stop. The trash bin was 103 to 105 feet from the crosswalk.

---

**End of Document**                                        © 2019 Thomson Reuters. No claim to original U.S. Government Works.