UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| ROBERT CARTY, Individually and as Parent and Next Friend of Minor E.C., <br><br> v. <br><br> UNITED PARCEL SERVICE, INC. | Civil Case No.: 1:19-cv-00354-JL |

**DEFENDANT'S REPLY TO PLAINTIFF'S OBJECTION TO
MOTION FOR JUDGMENT ON THE PLEADINGS**

NOW COMES the Defendant, United Parcel Service, Inc. ("UPS"), by and through its counsel, Orr & Reno, Professional Association, and in accordance with Local Rule 7.1(e)(1) hereby submits this reply to Plaintiff's Objection to Defendant's Motion for Judgment on the Pleadings. In response thereto, UPS states as follows:

1.  Plaintiff's two negligence claims against UPS are based on his allegation that UPS unreasonably chose to lean a long and heavy package against his house, where he lived with his family and minor child, where it potentially could fall on a child and cause serious injuries. (*See* Complaint at ¶¶ 8-9, 14-15, 19-20.) Absent from Plaintiff's Complaint is any allegation that the presence of a minor child (particularly a young and small child) at the subject property was or should have been foreseeable to UPS and its delivery driver. In Plaintiff's Objection, the best Plaintiff can offer is that he and his family live in a residential neighborhood and thus UPS, through its drivers, according to Plaintiff's logic, supposedly has a perpetual duty to anticipate potential injury to small children when any delivery is completed in a residential setting. (Plf.'s Objection Memo. of Law at 12.) That is contrary to what the law recognizes as a cognizable claim, as explained in UPS's previous memorandum of law and below.

1

2.      In response to UPS's FAAAA preemption affirmative defense, Plaintiff attempts to argue that the liability argument he makes against UPS does not have a forbidden connection with UPS's prices, routes, or services, including being related to the "transportation of property," and thus that his claims are not preempted by the FAAAA. (Plf.'s Objection Memo. of Law at 4-5.) What Plaintiff ignores, though, is that the liability argument he makes relates to UPS's manner of transporting and delivering packages, and thus its core service, and that a liability finding against UPS on his claims could result in UPS altering its driver-release program in New Hampshire, where packages are left at residential properties even though the addressee is not physically present to receive the package. Claims that seek to impose obligations on UPS concerning the manner in which it is required to make deliveries have been preempted because they are based on UPS's core service and improperly seek to apply state law to control the manner in which UPS provides that service.

3.      Plaintiff argues that UPS ignores a vast body of case law and maintains that Plaintiff's claims do not relate to a motor carrier's "service." In making this argument, Plaintiff altogether ignores *Tobin v. Federal Express Corp.*, 775 F.3d 448 (1st Cir. 2014), *Vieira v. United Parcel Service, Inc.*, No. C-95-04697, 1996 WL 478686 (N.D. Cal. Aug. 5, 1996), and *Northwest, Inc. v. Ginsberg*, 572 U.S. 273 (2014)[1], which UPS relies on in its motion for entry of judgment pleadings. This is particularly surprising relative to *Tobin*, which is a First Circuit case that is directly on point. *See Tobin*, 775 F.3d at 455 (recognizing the broad construction afforded to the "related to" language and how that "intent is driven by the desire to further efficiency, innovation, and low prices as well as variety and quality of services and to ensure that the states

---

[1] *Northwest* also discusses the "central purpose of the ADA," which just like the FAAAA relative to motor carriers, "eliminated federal regulation of rates, routes, and services in order to allow those aspects of air transportation to be set by market forces, and the pre-emption provision was included to prevent the States from undoing what the Act was meant to accomplish." *Northwest*, 572 U.S. at 283.

do not undo federal deregulation with regulation of their own" (quotations omitted)).  Courts have applied the FAAAA, as argued by UPS here and in its motion for judgment on the pleadings, to a "service" such as the transportation and delivery of packages.

4. While motions arguing preemption under the FAAAA and/or ADA are not routinely granted, there are clear circumstances where preemption is recognized.  Plaintiff cites and quotes to case law establishing that "service . . . refers to such things as the frequency and scheduling of transportation," (Plf.'s Objection Memo. of Law at 5 (quoting case)), but yet Plaintiff does not acknowledge that claims that attack the manner in which UPS delivers its packages and related broad policy-based delivery protocol determinations that UPS has made (including the utilization of a driver-release program for packages delivered in appropriate residential settings) are claims to which the FAAAA applies.

5. The cases that Plaintiff relies on in his FAAAA argument (discussing the Airline Deregulation Act (ADA), 49 U.S.C. § 41713(b)(1), and cases involving such things as injuries from a flying beverage cart, luggage falling from an overhead bin, and tripping over luggage left in an aisle) are cases dealing with matters that are not the manner and service of flying.  (*See* Plf.'s Objection Memo. of Law at 5.)  Unlike *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1262-63 (9th Cir. 1998), which was a consolidated case where, among other scenarios, the manner of "service" did not extend to the pushing of beverage carts, in this case the "service" at issue relates to UPS's core service (i.e., package delivery) and potentially extends far beyond the specific manner in which this particular package was left at this particular house on this particular day.  If the outcome of this case were to cause UPS to implement changes to its driver-release program in New Hampshire, that would be contributing to the patchwork regulatory framework that the FAAAA seeks to prevent.  Because of the potential for the formation of a

patchwork state-regulatory framework, of varying and inconsistent standards, that the Supreme Court forbade in *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 373 (2008), Plaintiff's claims in this case extend into UPS's driver-release program, involving a protocol, just as in *Rockwell v. United Parcel Service, Inc.*, No. 99-CV-57, 1999 WL 33100089 (D. Vt. July 7, 1999), that UPS employs in residential settings.

6. Here, Plaintiff's negligence claims are founded upon his allegation that "UPS had a duty to use reasonable care when delivering large and heavy packages to place them in such a way to avoid causing foreseeable harm to others." (Complaint at ¶¶ 14, 19.)  Plaintiff's claims regarding UPS's manner of package delivery go to the very heart of the services that UPS provides—namely delivering packages <u>and company policies and procedures for such deliveries</u>.

7. Plaintiff's claims have such broad and potentially far-reaching effect because Plaintiff suggests that UPS should have left the subject package laying on its side.  Plaintiff states, "The injury to E.C. could have been avoided entirely had the UPS driver laid the package flat on the ground instead of precariously leaning it against the Carty residence.  A heavy package poses no risk of falling on a child if it is laid flat on the ground." (Plf.'s Objection Memo. of Law at 10; *see also* Complaint at ¶¶ 8-9 (faulting UPS for leaving the package leaning against the house near one of the doorways).)  However, case law from other jurisdictions (and common sense) have faulted UPS for such manner of delivery, on the basis that the horizontal package was a tripping hazard.

8. For example, in *Kuehne v. United Parcel Service, Inc.*, 868 N.E.2d 870 (Ind. Ct. App. 2007), UPS was sued under a negligence theory that the UPS driver never should have placed a package in front of a door, where it created a tripping hazard.  *Id.* at 876.  The *Kuehne* court explained, in denying the defendant's FAAAA preemption argument, that the issues in that

4

case concerned "a common sense approach to a delivery process that bears no overarching consequences, contrary to those in *Rockwell*." *Id.*  Similarly, in *Muzzarelli v. United Parcel Service, Inc.*, No. 1:15-cv-01169, 2017 WL 2786456 (C.D. Ill. June 27, 2017), UPS was sued after the plaintiff was injured when she tripped over a package delivered by UPS and placed on the porch outside her boyfriend's home.  Overarching consequences and the potential development of a patchwork regulatory framework across the states are exactly why the FAAAA applies to this case.  *Kuehne* and *Muzzarelli* contribute to the formation of a patchwork legal framework by indicating that a package cannot be left where it would be a tripping hazard.

9. In the instant case, Plaintiff specifically argues that the package should not have been left leaning against the house, to the side of the door, where it constituted a purported falling hazard, and instead that the UPS driver should have "laid the package flat on the ground." (Plf.'s Objection Memo. of Law at 10; *see also* Complaint at ¶¶ 8-9.)  Thus, Plaintiff demands placement of the package horizontally on the ground, where other plaintiffs have argued that such packages caused tripping accidents.  The outcome of allowing this case to go forward could contribute to the development of a patchwork framework relative to whether UPS should leave residential-delivery packages horizontally or vertically (where in some cases UPS is blamed for doing it one way, and in other cases it is blamed for doing it the other way), which could ultimately prompt UPS to alter its driver-release program for residential deliveries.  That would have a significant policy and regulatory effect, specific to UPS and its residential package delivery operations.  A plaintiff's negligence theory that amounts to a request to change a common carrier's procedures falls under the FAAAA's preemption provision.  *See Rowe*, 552 U.S. at 372-73 ("To allow Maine to insist that the carriers provide a special checking system would allow other States to do the same."); *Muzzarelli*, at *6 (discussing that the analysis

5

involves consideration of whether the plaintiff's theories could force an alteration or implementation of a new delivery process).

10. The instant case is like *Rockwell v. United Parcel Service, Inc.*, No. 99-CV-57, 1999 WL 33100089 (D. Vt. July 7, 1999), alleging negligence by UPS in its intake and delivery protocol for failure to have an inspection process that would reveal a pipe bomb contained in a package, *id.* at *8, in the sense that Plaintiff's liability theory could lead UPS to alter its driver-release program in New Hampshire, causing a patchwork regulatory framework. As in *Rockwell*, where the court found that the plaintiff's claims "go to the heart of the services that UPS provides" and thus applied FAAAA preemption, *id.* at *2 (quotation omitted), the same can be said with regard to UPS's delivery of a long and heavy box in this case and the matter of whether it can be left for a residential customer or, alternatively, if UPS needs to modify its driver-release program in New Hampshire to protect itself from potential liability since plaintiffs fault UPS for leaving packages either horizontally or vertically.

11. Barring Plaintiff's claims here achieves the purpose of the FAAAA's preemption provision—namely avoiding "a patchwork of state service-determining laws, rules, and regulations." *See Rowe*, 552 U.S. at 372-73; *see also Massachusetts Delivery Ass'n v. Healey*, 821 F.3d 187, 191 (1st Cir. 2016) (referring to FAAAA preemption as "purposefully expansive and [stating that it] may occur even when the state law has only an indirect effect on prices, routes, or services").

12. With regard to UPS's second legal argument, that Plaintiff's Complaint fails to state a claim against UPS that alleges sufficient foreseeability (and thus establishes a duty to anticipate the events that occurred) to support Plaintiff's two negligence claims, and Plaintiff's own Objection proves that.

6

13. Some of the very cases Plaintiff cites in his Objection severely undercut his legal argument. For example, in *Kellner v. Lowney*, 145 N.H. 195 (2000), a child was injured when he crossed a public highway and was hit by a passing vehicle. However, "the defendant was aware of the traffic conditions on Route 302[,] [s]he knew that . . . a large number of her [motel] guests [were of a particular religious denomination whose practitioners do not drive on the day of the week when the accident occurred and] would likely cross the highway after religious services were completed[,] [and] [s]he also knew that families with small children would participate in these services." *Id.* at 198. The New Hampshire Supreme Court determined, "The risk of injury to young children crossing the road is entirely foreseeable under these circumstances." *Id.* Thus, *Kellner* is vastly different from this case, where Plaintiff has utterly failed in his Complaint to allege any indicia of foreseeability.

14. Not only is *Kellner* factually distinguishable and contrary to the circumstances in this case, but it also provides a straightforward recitation of the law that proves Plaintiff's Complaint fails to state negligence claims. As stated in *Kellner*, in discussing landowner liability (but also applicable to UPS here with regard to foreseeability):

> Under our law, in order for a duty to exist on the part of the landowner, it must be foreseeable that an injury might occur as a result of the landowner's actions or inactions. "Generally, persons will not be negligent if they could not reasonably foresee that their conduct would result in injury to another or if their conduct was reasonable in light of the anticipated risks. Thus duty and foreseeability are inextricably bound together."

*Id.* (quoting *Manchenton v. Auto Leasing Corp.*, 135 N.H. 298, 304 (1992)).[2] In the absence of any allegation of specific facts alleging any actual foreseeability in this case, Plaintiff has failed to state a claim that UPS owed a duty to E.C. or Plaintiff.

---

[2] In *Kellner* a duty was also much more likely to be found than in the instant case because in *Kellner* there existed a special relationship between the innkeeper and plaintiff guest. *Kellner*, 145 N.H. at 198.

15. Similarly, the Pennsylvania case of *Patterson v. Palley Mfg. Co.*, 61 A.2d 861 (Pa. 1948) also is distinguishable and demonstrates the absence of any allegation of foreseeability in this case. *Patterson* involved injuries a child sustained while playing in a construction site where the "presence [of such children] [after construction work hours] . . . was known generally to the workmen, and the official of [the construction company] who was in charge of the work had received direct information in regard thereto." *Id.* at 863. Thus, the appellate court concluded that the construction company's workmen "were leaving the premises in a condition which constituted a foreseeable danger to children who could have been expected to come that evening into the stable and play around the . . . wall [that collapsed and portions of which fell on the minor who was injured]." *Id.* at 863. The court further explained that the defendant construction company "had been put on notice that children had each evening been playing on and around this wall and it had every reason to believe that they would do so again on that evening with likely danger to themselves." *Id.* at 863-64.[3] Thus, the clear differences in foreseeability in *Patterson* renders it completely distinguishable from this case.[4]

16. In *Cui v. Chief, Barrington Police Department*, 155 N.H. 447 (2007), the New Hampshire Supreme Court observed that "[t]he existence of a duty depends upon what risks, if any, are reasonably foreseeable under the particular circumstances," *id.* at 449, and the supreme court subsequently "decline[d] to impose a legal duty upon the Town to prevent a stray dog from

---

[3] The court in *Patterson* further explain that "[t]he basis of liability in cases such as this rests upon the well established principle that a person in possession of land who knows that children commonly come thereon, that its condition is such as to make it peculiarly attractive to their inquisitive and playful instinct, and that their playing there is likely to be attended with danger, must take all reasonable measures to avoid resulting injury to such children." *Id.* at 865. Those circumstances are vastly different from this case.
[4] Additionally, Plaintiff cites *Glenn v. G.I. Industries*, No. B167900, 2004 WL 1689395 (Cal. Ct. App. July 29, 2014), but in that case the appellate court actually held that while the accident was "not unforeseeable, it [wa]s not 'sufficiently likely'" to give rise to a duty. *Id.* at *6-7. Plaintiff also cites to *Gregory v. Johnson*, 289 S.E.2d 232 (Ga. 1982), involving a child who drowned in a swimming pool, but the plaintiffs in *Gregory* alleged that "young children were known to be in the vicinity of the pool," that "[the defendants] had been warned about the presence of children and had refused to erect a fence to protect them," and that the swimming pool with a "playground-type slide on an open lot" was an attractive nuisance. *Id.* at 233. In all of these ways, *Gregory* is plainly opposite the foreseeability allegations in this case.

wandering on the plaintiff's property and chewing on his dwelling [because] [t]o hold otherwise would impermissibly make the Town a guarantor of public peace, safety and welfare." *Id.* In the same way, Plaintiff's lack of an alleged basis for foreseeability by UPS and its driver (other than his still inadequate and belated <u>argument</u> that E.C.'s presence and accident was foreseeable because her parents' house is in a residential neighborhood, *see* Plf.'s Objection Memo. of Law at 12) results in his claims failing to state a claim upon which relief can be granted.[5]

17.   Plaintiff's Complaint fails to allege that the minor E.C.'s potential presence on the property and her accident were foreseeable to UPS or its delivery driver, or that they should have been. As Plaintiff has no facts upon which he can rely to allege that E.C.'s potential presence on the property and her accident were or should have been foreseeable to the UPS driver, and as Plaintiff's deadline to amend his pleadings has expired, UPS is entitled to entry of judgment on the pleadings in its favor and Plaintiff's claims should be dismissed with prejudice.

WHEREFORE, the Defendant, United Parcel Service, Inc., respectfully requests that this Honorable Court:

A.   Grant UPS's Motion for Judgment on the Pleadings and dismiss, with prejudice, Plaintiff's claims against UPS; and

B.   Grant such other and further relief as may be just and equitable.

---

[5] There is nothing premature about UPS's Rule 12(c) motion for judgment on the pleadings lack of alleged foreseeability argument, which is premised on Plaintiff's pleadings and is made after Plaintiff's deadline to amend his pleadings has expired.

Respectfully submitted,

**United Parcel Service, Inc.**

By its attorneys,

ORR & RENO, PROFESSIONAL ASSOCIATION

Dated:  August 29, 2019          By:         */s/ Jonathan M. Eck*
                                          Jonathan M. Eck, Esq. (NH Bar #17684)
                                          45 S. Main Street
                                          Concord, NH  03302
                                          (603) 223-9100
                                          jeck@orr-reno.com

## CERTIFICATE OF SERVICE

I, Jonathan M. Eck, certify that on this date service of the foregoing document was made upon counsel of record via the Court's CM/ECF System.

Dated:  August 29, 2019                  */s/ Jonathan M. Eck*
                                          Jonathan M. Eck, Esq. (NH Bar #17684)