## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

ROBERT CARTY, Individually and as Parent
and Next Friend of Minor E.C.,

      v.

UNITED PARCEL SERVICE, INC.

Civil Case No.: 1:19-cv-00354-JL

## PLAINTIFF'S SURREPLY TO DEFENDANT'S
## MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Robert Carty, Individually and as Parent and Next Friend of Minor E.C., by and through his attorneys, Primmer Piper Eggleston & Cramer PC, submits the following Surreply to Defendant United Parcel Service, Inc.'s ("UPS") Reply to Mr. Carty's Objection to UPS' Motion for Judgment on the Pleadings.

## I.   ARGUMENT

### A.   FAAAA PREEMPTION DOES NOT APPLY

In at least three other cases involving UPS as a defendant, Courts have rejected UPS' position that the federal law preempts ordinary state-law tort claims for personal injuries where UPS was alleged to have negligently delivered packages to its customers. Kuehne v. United Parcel Service, Inc., 868 N.E.2d 870 (Ind. Ct. App. 2007); Muzzarelli v. United Parcel Service, Inc., No. 1:15-cv-01169-JBM-JEH, 2017 WL 2786456 (C.D. Ill. June 27, 2017) (Ex. C to Plaintiff's Objection); Centuori v. UPS, No. C16-0654JLR2, 2017 WL 1194497 (W.D. Wash. Mar. 30, 2017) (Ex. D to Plaintiff's Objection). The material facts of those cases are the same as here. UPS was alleged to have negligently placed a package at its destination in such a way that caused injury. In the present case, as in Kuehne, Muzzarelli, and Centuori, UPS' negligence occurred upon package placement at the final destination. How a package is placed (i.e., whether placed in such a way that

it may fall on a person or cause a person to trip), is too *tenuously* related to UPS' routes, rates, and services for preemption to apply. <u>Morales v. Trans World Airlines, Inc.</u>, 504 U.S. 374, 390 (1992); <u>Rowe v. N.H. Motor Transp. Ass'n</u>, 552 U.S. 364, 371 (2008). If the claim's connection to a carrier's services is "tenuous, remote, or peripheral," preemption will not attach. <u>Morales</u>, 552 U.S. at 390. The tenuousness of the connection between UPS' services and placement of packages at their final destination was why the claims in <u>Kuehne</u>, <u>Muzzarelli</u>, and <u>Centuori</u> were not preempted. The same is true here.

Enforcement of the public expectation that UPS not place packages in such a way to create a hazard has virtually no effect, let alone a tenuous one, on UPS' services. <u>See</u> <u>Charas v. Trans World Airlines, Inc.</u>, 160 F.3d 1259, 1265-66 (1998) ("[S]ervice . . . refers to such things as the frequency and scheduling of transportation, and to the selection of markets to or from which transportation is provided . . . . To interpret 'service more broadly is to ignore the context of its use; and, it effectively would result in the preemption of virtually everything [a carrier] does."). The connection between the claim and the service "cannot be de minimis: the challenged law must have a forbidden *significant* effect on prices, routes, or services . . .", otherwise "preemption will not attach." <u>Tobin v. Federal Exp. Corp.</u>, 775 F.3d 448, 455 (2014) (emphasis added and internal quotations omitted).

UPS states that <u>Tobin</u>'s facts are directly on point. They are not. There, FedEx had delivered to the plaintiff a package containing marijuana that should have been delivered to a different address and brought state-law tort claims against FedEx for invasion of privacy, infliction of emotional distress, and negligence. The mix-up in <u>Tobin</u> resulted from a FedEx employee incorrectly labeling the parcel with the plaintiff's address when the unknown sender in California dropped off the marijuana to be shipped to the intended recipient in Massachusetts. The <u>Tobin</u>

plaintiff specifically alleged deficiencies in FedEx's package labeling system. That aspect of the claim in <u>Tobin</u> is key, ". . . as a finding that FedEx's procedures were inadequate would have the significant effect of requiring new and enhanced procedures for labeling, verification, and delivery of packages (FedEx's main business)." <u>Id.</u> at 456. The <u>Tobin</u> court specifically distinguished between the significant effect that plaintiff's claims would have on FedEx's services from "garden-variety tort claims" with only a tenuous connection to a carrier's services. As an example of a case where preemption did not apply due to such a tenuous connection, <u>Tobin</u> specifically contrasts its facts from <u>Kuehne</u>, discussed *supra*, where UPS was sued for leaving a package in such a way that caused a customer to trip. <u>Id.</u> at 455; <u>Kuehne</u>, 868 N.E.2d 870 (concluding that homeowner's tort claim arising from fall over package left on front step by UPS was not preempted by the FAAAA). <u>Tobin</u>, accordingly, is of no support to UPS here.

<u>Rockwell v. United Parcel Serv., Inc.</u>, where the plaintiff alleged, after having been shipped a pipe bomb, UPS was negligent in not inspecting the package before delivery, is also distinguishable from the present case for the same reason. <u>Rockwell v. United Parcel Serv., Inc.</u>, No. 2:99 CV 57, 1999 WL 33100089 (D.Vt. July 7, 1999) (Ex. B to Plaintiff's Objection). There, the court found preemption did not apply as UPS' alleged negligence (not screening for dangerous items) occurred during "the pre-delivery processes of UPS" and were thus "relate[d] to its services." <u>Kuehne</u>, 868 N.E.2d at 876. Again, what distinguishes <u>Rockwell</u> from <u>Kuehne</u>, <u>Muzzarelli</u>, and <u>Centuori</u>, is that the negligent acts in the latter three occurred upon placement of the parcels at their final destination, i.e., the customers' doorstep, as opposed to during intake or transit. <u>E.g.</u>, <u>Kuehne</u>, 868, N.E.2d at 876. As Mr. Carty's theories of negligence do not concern any "pre-delivery processes of UPS," there can be no "significant impact" on UPS' services. <u>Id.</u>

UPS suggests that not recognizing preemption here would subject it to the paradox of being permitted neither to leave packages on the ground nor leaned against a building. The company claims that it would be subject to lawsuits either way. The paradox, of course, is false, because the exercise of reasonable care would permit UPS to utilize either delivery method in appropriate circumstances. For example, UPS may leave packages on the ground provided they are not left in a place that might create a tripping hazard. Leaning a package against a building is also sometimes appropriate, provided it is not so large or heavy, as was the case here, that it might constitute a falling danger. The standard of reasonable care requires some thought on the part of UPS and its drivers to leave packages in safe locations based on the circumstances. UPS' hyperbole aside, enforcing the standard of reasonable care will not leave its drivers without a place to deposit parcels.

### B.    THE INJURY TO E.C. WAS FORESEEABLE

UPS argues that the injury was not foreseeable and that, as a matter of law, the Court should dismiss this action. Foreseeability, however, raises mixed questions of law and fact, and is ripe to be the subject of a dispositive motion only upon a complete record, as was the case in Palsgraf v. Long Island R. Co., 248 N.Y. 339 (1928) and Macie v. Helms, 156 N.H. 222 (2007). Ashworth v. Albers Medical, Inc., 410 F.Supp.2d 471 (S.D.W. Va. 2005) (defining components of foreseeability as legal and factual).

Cases such as Palsgraf v. Long Island R. Co., 248 N.Y. 339 (1928) and Macie v. Helms, 156 N.H. 222 (2007) illustrate how premature UPS' motion is. Those decisions involved legal determinations of foreseeability based on complete factual records. Discovery here, however, is ongoing, and the Court lacks sufficient facts to rule, *as a matter of law*, that an injury caused by UPS' actions was not foreseeable. At trial, Mr. Carty will introduce evidence that Denbow Road,

where E.C. was injured, is a small, U-shaped road that connects on both ends to another residential street, and is part of a large residential neighborhood of the sort where many children live. <u>See e.g.</u>, <u>Bing Satellite Image</u> (reflecting the dense residential development of Denbow Road) (Ex. H to Objection).

Yet, even based on record to date, the element of foreseeability is easily satisfied. UPS takes the legally-unsupported and narrow view that the *exact harm* to the *exact plaintiff* must have been foreseeable. UPS essentially argues that foreseeability was absent because its driver did not actually know that a child was present at the Carty residence. That sort of "prophetic vision," however, is not required for foreseeability. <u>Cartee v. Saks Fifth Ave.</u>, 277 A.D. 606, 609-10 (N.Y.App. Div. 1951) ("The fundamental basis of liability for actionable negligence is the reasonable foreseeability of the risk, the ability reasonably to anticipate the risk; every possible accident due to unusual and reasonably unforeseeable combinations of circumstances is not included; reasonable foresight is required but not prophetic vision.") UPS' driver's foresight of injury to a child, specifically, is not required. Foreseeability here requires only knowledge that heavy objects can hurt people. UPS, no doubt, is aware of that fact, particularly given that it labeled the package that fell on E.C. with "Caution – Heavy Package" stickers. <u>Complaint</u>, 9. That alone is thus sufficient for the Court to reject UPS' foreseeability argument.

But even if, as UPS assumes, some knowledge concerning the likelihood a child might be present is required to satisfy foreseeability, that is satisfied by the allegations in the pleadings and by the facts on record. The Complaint adequately pleads foreseeability of the injury that occurred on Denbow Road, which is part of a residential neighborhood. <u>Complaint</u>, ¶ 8 ("When UPS delivered the long and heavy parcel to 10 Denbow Road it left the box leaning against the house near one of the residence's doorways in such a way that it could fall on a child and cause serious

injuries."); <u>Complaint</u>, ¶ 15, 20 ("UPS breached that duty by precariously leaning a large and heavy package against the 10 Denbow Road residence when it was foreseeable that it might fall on a child.").

Plaintiff raised several cases in the Objection supporting that reasonable person will foresee the potential that children might be present and will foresee how children might interact with their surroundings. <u>Kellner v. Lowney</u>, 145 N.H. 195 (2000) (foreseeable that children might dart into roadway between motel buildings); <u>O'Neil v. Electrolux Home Products, Inc.</u>, No. 06–10433–DPW, 2008 WL 2066948 (holding in products liability case, "[I]t was foreseeable that the Tractor would be purchased for residential mowing and that children might be near the Tractor while it was in operation.") (Ex. I to Objection); <u>Glenn v. G.I. Industries</u>, No. B167900, 2004 WL 1689395 (2nd Cir. 2004) (Ex. J to Objection); (finding residential nature of area made foreseeable child's presence); <u>State v. Mickel</u>, 581 So. 2d 404 (La.App. 5 Cir. 1991) (finding that it was foreseeable that a person may be seriously injured or killed when the defendant fired a weapon in a residential neighborhood where children were playing); <u>Gregory v. Johnson</u>, 249 Ga. 151 (1982) (holding jury must determine whether one knew or should have foreseen presence of children coming into contact with dangerous object); <u>Patterson v. Palley Mfg. Co.</u>, 360 Pa. 259 (1948) (collapse of wall under construction onto child held foreseeable in area children could be expected).

In cursorily addressing those authorities, UPS again suggests that *actual knowledge* of children's presence is required for an injury to a child to be foreseeable. That is not the law. As was the case in <u>O'Neil</u>, No. 06–10433–DPW, 2008 WL 2066948, where a lawnmower manufacturer's absence of actual knowledge that a mower might be used near children did not render the injury unforeseeable, the injury to E.C. was foreseeable even though UPS claims ignorance of children's presence on Denbow Road. The law only requires only that it was

reasonably foreseeable children *might* be present. Actual knowledge is not required. Although UPS claims ignorance regarding children's presence on Denbow Road, the injury was nevertheless foreseeable because one could have reasonably anticipated that children might be present, just a children are throughout the country in residential neighborhoods such as Denbow Road. As in the above cases, particularly those where the defendants lacked specific knowledge that the child in question would be present at the time of the harm, it was foreseeable to the UPS driver that a child might be present. The Court accordingly should reject UPS' foreseeability arguments.

## II.   <u>REQUESTED RELIEF</u>

UPS has presented no adequate grounds for judgment on the pleadings. The overwhelming weight of authority is clear that the FAAAA does not preempt personal injury negligence actions, particularly where the negligent act, i.e., where a package is placed, is unrelated to the motor carrier's service, i.e., "the provision of [parcel] transportation to and from various markets at various times . . .". <u>Charas</u>, 160 F.3d at 1266.  More, the injury here was foreseeable as UPS knows that heavy objects are dangerous and its driver should have reasonably anticipated that children might be present in E.C.'s residential neighborhood. Accordingly, the Court should deny UPS' motion.

Respectfully submitted,

**ROBERT CARTY, as parent and next
friend of ELIZABETH CARTY**

by his attorneys,

**PRIMMER PIPER
EGGLESTON & CRAMER PC**

Dated:   September 3, 2019            by:     /s/ Gary M. Burt
                                             Gary M. Burt, #5510
                                             John D. Prendergast, #266235
                                             P.O. Box 3600
                                             Manchester, NH  03105-3600
                                             603.626.3300
                                             gburt@primmer.com
                                             jprendergast@primmer.com

## CERTIFICATE OF SERVICE

The foregoing Memorandum of Law has this day been forwarded to Attorney Jonathan M. Eck via the court's electronic filing system.

                                              /s/ Gary M. Burt
                                             Gary M. Burt, #5510